## CH. TYRRELL L. & B. ASS'N v. JERE. HALEY.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 4 OF PHILADELPHIA COUNTY.

Argued January 8, 1891—Decided January 19, 1891.
[To be reported.]

1. When stock in a building association has matured, the debt of a borrowing stockholder is paid, and he is entitled to a return of the securities given therefor; and, if such maturity has occurred in point of fact, even though not declared by the association, it has no right to recover a judgment against one of its stockholders for the amount of his loan.

2. The fact that the constitution and by-laws of such an association provide for a division of assets at a meeting of the stockholders " when it shall be ascertained that" the stock has matured, does not preclude a borrowing member from showing, when sued upon a security given for the loan, that on a proper application of the profits of the association his stock is worth par.

3. It may be that such borrower would be entitled to a mandamus to compel the corporation to make a proper application and division of profits and to declare the stock matured, or might file a bill in equity for a like purpose; but he is not bound to assume the position of an actor, and to involve himself in the expense attendant upon either of those proceedings.

4. For, if his stock has matured, he is entitled to stop paying and rely upon the surrender of his securities by the association at the proper time; and if, instead of so doing, the association bring suit thereon, he may set up an equitable defence and show that the stock has matured, such defence being a substitute for a bill in equity for that purpose.

5. In passing upon the refusal of an offer to show by a witness, not a member of the plaintiff association, that on a certain date the value of each share of its stock was $218.24, the Supreme Court will assume the witness had sufficient knowledge upon the subject to enable him to sustain the offer, where nothing was shown to the contrary and no objection to his competency was made.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 394 January Term 1890, Sup. Ct.; court below, No. 344
June Term 1888, C. P. No. 4.

On June 6, 1888, with leave of the court below, judgment
was entered in favor of the Charles Tyrrell Loan & Building
Association of the city of Philadelphia, against Jeremiah
Haley, upon a bond containing a warrant of attorney to con-
fess judgment, dated December 14, 1877, and conditioned for
the payment of a loan of $1,200, made to the defendant by the
plaintiff, within nine years from date, with lawful interest,
fines, etc., and a monthly contribution of six dollars on six
shares of stock in the plaintiff association, all payable monthly,
on the fourth Monday of each month; provided that in case
of default for six months in the payment of interest, fines or
monthly contributions, the whole debt should at the option of
the association become due and payable.

On June 21, 1888, on application of the defendant, the court
granted a rule to open the judgment and let the defendant
into a defence, which was afterwards made absolute. There-
upon an issue was framed to try the plaintiff's right to recover,
the defendant pleading payment.

At the trial, February 10, 1890, the following facts were
shown upon the part of the defendant:

The defendant was a stockholder in the plaintiff association,
holding six shares of stock which formed a part of a series
started in May, 1887. In December of that year he borrowed
from the association, upon said shares, the sum of $1,200, at a
premium of ten per cent, giving a bond and mortgage therefor,
and assigning his six shares of stock to the association as col-
lateral security. The bond so given was the one upon which
judgment was entered in this case.

Article XII. of the constitution of the association provided
as follows:

" When it shall be ascertained that the value of each share
of stock amounts to two hundred dollars, a meeting of the
stockholders shall be convened, at which time a division shall
take place, and the holder of each share of stock shall receive
the sum of two hundred dollars, or his or her own securities

to that amount, with the same fully satisfied and discharged of record, and this corporation shall cease and determine."

The defendant paid to the association the monthly dues upon his stock, interest upon the loan, and fines, until November, 1887, in which month the annual meeting of the stockholders was held. Thereafter, claiming that the series of stock had matured by attaining the value of $200 per share, and that his indebtedness to the association was thereby extinguished, he declined to pay any more.*

Joseph Sheehan, being called and sworn for the defendant, testified that he was connected with various building associations, but was not a member of the plaintiff association. Thereupon, the defendant made the following offers:

Defendant offers to prove by this witness that the division of profits made by the officers of this association was not correct, and that the stock of the association, from which defendant borrowed, had, in November, 1887, attained a value of $200 per share.

Objected to by plaintiff's counsel, unless made more specific.

The defendant offers to prove by this witness that the stock in the series, in which defendant was a stockholder and had borrowed the loan in controversy, had reached a value of $200 ; and, further, that the stock upon which he had borrowed the loan in controversy was worth in November, 1887, $218.24 a share.

Objected to by plaintiff, because the constitution and by-laws provide a method for division of profits, and witness could testify only as a matter of judgment.

By the court: Objection sustained; exception. [1]

The testimony for the defendant being closed, the court,

---

* It was stated in the appellant's paper-book, though not shown in the testimony, that the plaintiff's shares were in the eighth series, which began in May 1877. How many series were begun after 1877 was not given, but it was stated that the depositions taken under the rule to open the judgment " showed that the profits made by the association during several years had been divided equally among the shares, giving to a share of the last series the same amount as to a share in the oldest series, though one had paid in only $12, whereas the other had paid in $144, making the last series earn ninety-six per cent per share, while the oldest series earned but five per cent."

WILSON, J., directed the jury to find a verdict for the plaintiff for the full amount of its claim. The jury, accordingly, returned a verdict for the plaintiff for $1,413.05. A rule for a new trial having been refused, and judgment entered, the defendant took this appeal, specifying that the court erred:

1. In refusing the defendant's offer.[1]
2. In directing a verdict for the plaintiff.

*Mr. William Gorman,* for the appellant:

The trial judge evidently proceeded on the general theory that the value of the stock could not be shown, as an extinguishment of the debt, where the party was in arrears. This was manifestly error, since the terms of article XII. of the constitution of the society are conclusive as to the defendant's rights. That article provides that when the shares of stock reach the value of $200 each, the borrower is entitled to have his securities returned and canceled. This was a suit on one of the securities given by the defendant under the constitution, which therefore became a part of the contract. What, then, could be more pertinent to the issue than to show that the series of stock which included that of the defendant, had reached the value which the constitution said should be considered full payment and satisfaction of such securities? The value of the stock in any other series is immaterial.

*Mr. John H. Sloan,* for the appellee:

1. The defendant did not ask credit at the trial for the payments he had made on his stock, but staked his whole defence on the idea that, according to his method of calculating the proper division of profits, his stock should have matured in November, 1887; and, being of that opinion, he took the risk of refusing to make any more payments after that time. He was not entitled under the constitution to credit for any profits, until the stock became worth $200: Watkins v. Building Ass'n, 97 Pa. 523. He was not a withdrawing member, and could not be, because he was a borrower: Watkins v. Building Ass'n, supra. By refusing to make further payments he put himself in the position of a delinquent.

2. One stockholder in a building association cannot assume for his own benefit that his stock has matured, against the ac-

tion of the whole body of stockholders who declare that it has not matured, and thus disarrange the whole system of division of profits, especially when he never objected at any meeting. There is nothing in the record to show that the defendant ever objected to the division of profits made in November, 1887. The constitution provides that the final division of profits and cancellation of securities shall take place at a meeting of the stockholders convened, "when it shall be ascertained that the value of each share of stock amounts to $200." A jury cannot determine the question of maturity when the constitution provides that the stockholders shall do so.

3. The court below did not rule, as the defendant seems to think, that the question of maturity of stock could not be considered. The rejected offer of testimony did not propose to show that the stock had matured in the manner prescribed by the constitution; but that, according to the opinion of one Mr. Sheehan, who was not a member of the association at all, and who was not shown to be competent to give an opinion, the stock should have matured in November, 1887. Disregarding this clearly incompetent offer, how could the court do otherwise than direct a verdict for the plaintiff? There was no offer to show that the stockholders had declared this stock matured, and, in fact, the defendant's own evidence showed that they had not.

OPINION, MR. CHIEF JUSTICE PAXSON:

The plaintiff below is a building association; the defendant is a stockholder in the same. He procured a loan of money from the association, and gave his bond and mortgage therefor. After his stock had matured, as he alleges, the association entered judgment upon the bond, by virtue of the warrant of attorney attached. This judgment was opened by the court below upon his application, and a trial had to ascertain how much was due upon the mortgage. The result was a verdict for the full amount. The defence was that the stock of the series to which the defendant belonged, had fully matured, and was worth par, viz., two hundred dollars per share.

If the defendant is right in his contention, he certainly ought to have an opportunity of showing it, under his equitable plea of payment. As the case stands, he has a judgment at law

against him for the full amount of the mortgage, which carries with it the costs of suit, while I see no relief from the effect of this judgment, except by a proceeding in equity, which involves additional expense and trouble. It would be unjust to subject him to all this, if, in point of fact, his series has matured. It is a well-settled rule that when such stock has matured, the debt is paid, and the borrower is entitled to a return of his securities. There may be circumstances which prevent or delay the maturity of the stock in a given instance. This may result from fraud or mismanagement on the part of the officers of the association, or from loss on investments. But, when the stock has fairly matured, I am unable to see what right the association has to recover a judgment against one of its stockholders for the amount of his loan.

While the case was not very fully or clearly presented, there appears to have been a dispute between the association and the defendant as to the maturity of the stock. The series to which the defendant belonged was started in 1877. He had nothing to do with the other series; as to them he was not a member of the association. With the profits or losses of other series he had no concern. He claimed, and, upon the trial below, offered to prove by Joseph Sheehan, a witness called by him, that "the stock, in the series in which defendant was a stockholder and had borrowed the loan in controversy, had reached a value of two hundred dollars; and, further, that the stock upon which he had borrowed the loan in controversy was worth, in November, 1887, two hundred and eighteen dollars and twenty-four cents a share." This offer was objected to by the plaintiff, because "the constitution and by-laws provide a method for division of profits, and witness could testify only as a matter of judgment." The objection was sustained by the court below.

The witness was not a member of the association, and may not have had any knowledge upon the subject; yet, as the offer was rejected, we must assume he would have sustained the offer. His means of knowledge could have been tested upon his cross-examination. The objection was to the competency of the evidence, not to that of the witness. If we concede that the constitution and by-laws provide a method of the division of profits, it does not follow that the evidence, if re-

ceived, would not have showed that they have been divided precisely as the constitution and by-laws direct. On the other hand, the profits of defendant's series may have been applied to some other series, to aid in part to make up its losses. All this the defendant had a right to show, yet the inquiry was throttled at its very commencement. It may be the defendant would have been entitled to a mandamus to compel the corporation to divide and apply the profits to their proper series, and to declare the series matured; or, if necessary, to file a bill in equity for a like purpose. But he was not bound to assume the position of an actor, and involve himself in the expense which either of these proceedings would have entailed upon him. If his series had matured, he was entitled to stop paying, and to rely upon the association surrendering his securities when the proper time arrived. If, instead of doing this, the association brings suit upon his mortgage, he can surely set up an equitable defence, and show that his stock has matured. Such defence is a substitute for a bill in equity for that purpose. To meet such defence the association can show, if the fact be so, that the stock has not matured; that it has met with losses; or, any circumstances which tend to prove that the stock is not worth par. This is no hardship, as it has in its possession, and under its control, all the books, papers, and other evidence which bear upon the actual value of the stock. It can show how the profits have been divided, and, if they have been divided contrary to law, the error can be corrected by the court. Such associations, while useful in many instances, are not above the law, and cannot arbitrarily dispose of the property of their members.

If the defendant can sustain his offer, he has a full defence to the mortgage, and we are of opinion the evidence should have been admitted.

> The judgment is reversed, and a venire facias de novo awarded.