## The Charles Tyrell Loan & Building Association, Appellant, *v.* Jeremiah Haley.

[Marked to be reported.]

*Building associations—Value of shares—Profits.*

Where a building association issues a number of series of stock, the proper way to ascertain the value of any particular share at a given time is to add to the amount paid on the share a proportion of the profits ascertained by dividing the annual profits among all of the shares in proportion to the amount paid on each share.

*Estoppel—Course of business.*

Where the association used and adopted a different plan for many years, .

a stockholder, by failure to object, is not estopped from requiring a change in the method of ascertaining the value of the shares to the proper method as stated above.

Argued Jan. 5, 1894. Appeal, No. 453, Jan. T., 1893, by plaintiff, from judgment of C. P. No. 4, Phila. Co., June T., 1888, No. 344, on report of referee. Before STERRETT, C. J., GREEN, WILLIAMS, MCCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to report of referee, A. J. Maloney, Esq.
The facts appear by the opinion of the Supreme Court.

*Error assigned* was entry of judgment.

*Wm. Henry Lex* and *John H. Sloan*, for appellant.—It is only those members of a building association who remain till the full maturity of their stock in the respective series who are entitled to participate in the profits: Watkins v. Building Assn., 97 Pa. 523.

One may be estopped by mere nonaction; thus one who stands by and sees another lend money on or pay money for property, believing it to belong to a third person, will not be allowed to claim it against him afterwards: Tracy v. Lincoln, 145 Mass. 357; Putnam v. Tyler, 117 Pa. 570; Bank v. Morgan, 117 U. S. 96; Kilgore v. Smith, 122 Pa. 58; Bank v. Bailey, 147 Pa. 116.

The doctrine of estoppel has been much extended in modern times in Pennsylvania. Silence with knowledge is evidence of estoppel: Logan v. Gardner, 136 Pa. 600.

Payments on stock and the value of stock are not ipso facto credits on the loan of a borrower: Link v. Building Assn., 89 Pa. 15; 3 Brightley's Dig. 2999.

The decision of this court in the case of O'Rourke v. Building Assn., 93 Pa. 308, reported in the court below in 8 W. N. 176, is decisive of this case.

The apparent value is only for the benefit of those who pay up to a maturity of two hundred dollars per share and are not delinquent as this defendant is.

*William Gorman*, for appellee.—The finding of a master, referee or auditor, upon a question of fact, will not be set aside

unless there be direct evidence to convict the master, referee or auditor of error: Kisor's Ap., 62 Pa. 428 ; Sproull's Ap., 71 Pa. 137 ; McCullough v. Manning, 132 Pa. 55 ; Kutz's Ap., 100 Pa. 75; Logue's Ap., 104 Pa. 136; Bugbee's Ap., 110 Pa. 331; Bowers v. Bennethum, 133 Pa. 307; Kirby v. Bradford Co., 134 Pa. 109 ; Warner v. Hare, 154 Pa. 548.

To make an estoppel in any case it must appear that there was a representation made, and that this representation of facts was made with knowledge of those facts, and the party to whom the representation was made must have been ignorant of the truth of the matter alleged, and also destitute of all right means to acquire such knowledge by the use of ordinary diligence : Martin v. Ives, 17 S. & R. 364; Waters' Ap., 35 Pa. 523 ; Miles v. Miles, 8 W. & S. 135 ; Sunderlin v. Struthers, 47 Pa. 411 ; Diller v. Brubaker, 52 Pa. 498 ; Hepburn v. McDowell, 17 S. & R. 383 ; Barnett v. Barnett, 6 J. J. Marshall, 499 ; Maloney v. Horan, 10 Am. R. 335 ; Copeland v. Copeland, 28 Me. 525 ; Shaw v. Beebe, 35 Vt. 205 ; 6 Wait's Actions and Defences, 685 ; Hill v. Epley, 31 Pa. 331 ; Crest v. Jack, 3 Watts, 250 ; Randall v. Errington, 10 Vesey, 426 ; Watkins v. Building Assn., 97 Pa. 523 ; Putnam v. Tyler, 117 Pa. 570 ; Link v. Building Assn., 89 Pa. 15.

O'Rourke v. Building Assn., cited by plaintiff, does not apply to this case. In that case the association's stock had matured, each share was quoted at a value of $200. The stockholders were entitled to payment, but payment could not be made all at once, as the money could not be realized all at once upon the securities. O'Rourke wanted his money before the other stockholders, and, by suit, thought to get an advantage in the race for the funds. The court decided he could not do that; he must wait until the assets were turned into cash.

OPINION BY MR. JUSTICE GREEN, Oct. 1, 1894:

When this case was here before (139 Pa. 476) the judgment was reversed because of the rejection of the defendant's offer to prove that the stock of the eighth series, in which he was a stockholder, had reached a value of $200, and was really worth $218.24 in November 1887. We said, PAXSON, C. J.: "But when the stock has fully matured, I am unable to see what right the association has to recover a judgment against one of

its stockholders for the amount of his loan." And again: "If his series had matured, he was entitled to stop paying, and to rely upon the association surrendering his securities when the proper time arrived. If, instead of doing this, the association brings suit upon his mortgage, he can surely set up an equitable defence and show that his stock has matured. . . . If the defendant can sustain his offer, he has a full defence to the mortgage, and we are of opinion the evidence should have been admitted."

Acting upon this ruling the referee in the present case admitted the evidence offered, and, upon a consideration of the whole evidence upon this subject, he decided that the testimony sustained the offer and that in point of fact the stock of the eighth series fully matured in November, 1887, and was at that time worth $215.66.

The referee also found that because of this value of the defendant's stock the debt in suit was fully paid in November, 1887, under and in accordance with the constitution and by-laws of the association, and that therefore the defendant was entitled to have his bond and mortgage satisfied of record and returned to him. If this finding was correct the judgment must be affirmed.

Now the correctness of the finding is not really attacked or impeached, but it is contended that the association pursued another mode of determining when its stock was matured, and according to that mode this stock had not quite matured by becoming of the value of $200 in November, 1887, and that the defendant is bound by the method of computation adopted by the association, and is estopped from alleging or setting up any other mode.

As to the application of the doctrine of estoppel in such a case, and upon such facts, it is quite out of the question. Practically there is no element which is essential to estoppel that is present in this case. It is most certain that no action, or omission to act, on the part of the defendant ever induced the plaintiff to adopt or follow the method of computation upon which the plaintiff insists. The association never parted with any money in consequence of being misled by the defendant. The fact that the defendant did not object to the method pursued, at previous times, proves nothing. He was not called

upon to object, he was not obliged to take any action at those times. His interests were not then affected, and he was not obliged to speak. He may not have known anything about this somewhat mysterious subject which has puzzled the brains of so many intelligent men, lawyers and laymen alike, and about which so many experts differ. We are not referred to any evidence which proves, or tends to prove, that he had any knowledge of it whatever. Further, the language of the 12th article of the constitution, which is invoked as obligating the defendant to a particular mode of computation, says nothing about any mode. It simply says: "When it shall be ascertained that the value of each share of stock amounts to $200, a meeting of the shareholders shall be convened, at which time a division shall take place, and the holder of each share of stock shall receive the sum of $200, or his or her own securities to that amount, with the same fully satisfied and discharged of record." Ascertained how? The article does not say. Then it must be ascertained according to right and justice, and that is law. If any particular mode is unjust it is wrong and ought not to be adopted, and if adopted ought not to be followed. But substantially we decided this question in the former hearing in this court. Because, notwithstanding the very same objection made then as now, we decided that the defendant was at liberty to show what the real value of the stock was in November, 1887.

It seems to us the contention is narrowed to the inquiry, which is the just and proper method of ascertaining the value of the stock of the particular stockholder who is one of a particular series? Is it the method pursued by the plaintiff or the method found and adopted by the referee?

The referee states his method quite clearly and at length after first stating his objections to the method pursued by the plaintiff. He thus speaks of the latter method: "An examination of the mode demonstrates beyond question its injustice and inequality. The division of profits for the year, as it is called, is to every share in every series alike; this is only superficially fair because it ignores the amount of money accumulated as capital in the various series. At the beginning of the year, in November, 1886, each share of the sixth series had an accumulated capital of $132; each share in the seventh series $120;

each share in the eighth series $114; while each share in the nineteenth series had only $12, and each share in the twentieth series had none. It is true that each share during the year paid in alike $12, but can it be that the share having no capital should receive equal profits for the year with the share having a capital of $132? Surely not. In addition to which, this mode makes no allowance for a great loss or unusual profit. It is not in the least elastic and under it no provision whatever is made for profit and loss. It might possibly do for a single series, but should never be used where there are a number of series."

This is the method adopted by the referee: "The annual report of the association plaintiff made in November, 1887, shows assets $44,678.96, of which amount $30,891 were stock payments, and the balance $13,787.96 were profits; these profits evidently belonged in a fair proportion to the stockholders of the various series. It is obvious that the stockholders in the oldest series should be entitled not only to a share of the profits pro rata, but that the time during which the payments had been made should also be considered in reaching a fair and equitable division. If this be conceded, then the number of shares of each series should be multiplied by the number of months during which payments were made upon them, to find the amount paid in each series; then multiply the result by one half the number of months the particular series had run (that is, averaging the time) would produce for the purpose a just distribution of the capital invested for one year by that series; doing the same with each series, and adding together the various amounts of capital thus found gives the whole capital of the association for the year; dividing the profits by this aggregated capital gives the per cent of the profits for each share for the year. Then multiplying the amount actually paid on each share by the percentage gives the exact profit of each share in each series, and then adding the profit to the actual payment gives the exact value of each share."

The referee then annexes a table showing the number of each series, the number of shares of each series, the months paid by each, the average time of each, the amount paid in by each, and the amount invested for one year by each. He states the result as follows:

"Assets $44,678.96, $30,891, $13,787.96 profits.

" $13,787.96, $98,873 (amount invested), 13.9 percentage.

" Therefore taking one share of stock in the eighth series, the one in question, which in November, 1887, had run 10½ years, and averaging its time at 5¼ years at 13.9 per annum makes 72½ per cent, which on $126 paid on stock produces a profit of $89.66, and adding to it the amount paid on stock $126 makes each share worth $215.66."

We are obliged to say that after a careful examination of the testimony on this subject, we regard this as a fair, just and equitable method of computing the value of the stock where it is issued in several series, and that in these respects it is altogether superior to the mode pursued by the plaintiff. The referee was sustained in his conclusion not only by his own reasoning upon the subject, but by a large preponderance of the expert testimony taken before him. One of the witnesses, Joseph Shehan, who had many years' experience in building association matters, and was a treasurer of one for eight years, testified that the just and equitable mode of computing the value of the stock when issued in several series, was the mode adopted by the referee, and stated his reasons more fully, and he explained also the injustice of the plaintiff's method.

Another witness, Michael J. Brown, who had an experience of twenty-five years in building association matters, testified to the same effect and gave the most ample and satisfactory reasons for his conclusions. He was asked: " Q. You have heard Mr. Shehan's explanation of dividing profit according to capital paid in. Should it be done in that way, or how would you do it? A. That is the way I do it, and that is the way probably that 75 per cent of the societies in the United States divide their profits now. There was a time when they did not do it, but this is of course absolutely ridiculous. There is no doubt about that."

Much more testimony of the same character was given, and we are clearly of the opinion that the conclusion of the referee as to the method of computing the profits was entirely justified by the evidence.

A question is suggested whether there should not be a valuation of all the shares of all the series, at any time when a question arises as to the valuation of the shares of a particular member, and whether, therefore, a bill in equity ought not to

be filed in order to bring in all parties in interest. We held in this case when it was before us last, that the defendant could make his defence in the action on the bond without being obliged to resort to such a proceeding. But it would be an appropriate course to pursue, and one with which it would not be possible for any member to find fault as the absolute value of every share would, or might, by that means, be determined with accuracy. As at present advised we are not disposed to turn the defendant out of court for not pursuing his remedy in that way, in view of the testimony and findings in the court below.

The assignments of error are all dismissed.

Decree affirmed and appeal dismissed at the cost of appellant.

DISSENTING OPINION BY MR. JUSTICE FELL :

There are two methods of dividing profits in use by building associations having more than one series of stock. By one method the total annual profits are divided equally among all the shares, by the other the annual profits are divided among the shares in proportion to the amount paid on each. The first method is open to the objection that it gives to a share on which one year's dues have been paid the same profit that is given to a share on which a much larger amount has been paid. The second method is better, as by it each share is given each year the exact portion of the profits it is entitled to on the basis of the amount paid, and it is the money paid on the stock that earns the profits.

To this point I agree fully with the learned referee but I cannot accept the conclusion which he reached.

It was competent for the association to adopt the first plan or any plan which did equal justice to all of the members. It adopted the first and has worked under it since its organization in 1859. If as a matter of business this plan was not the wisest, still it was a just plan. It operated equally on every share of stock. A share was given too much the first years and too little the last. It received its exact proportion only at the middle of the life of the series but it received in the end the full amount to which it was entitled. The plan worked equally as to all the shares and exact justice was done to each stockholder.

This plan was deliberately adopted by the stockholders at the beginning in 1859, and each year since it has been submitted to

and approved by them at their annual meeting.  It has been the basis upon which all the business of the association has been conducted—its stock matured, its loans settled, the withdrawal value of shares fixed.

Under this plan the defendant's stock was during the earlier years credited with an undue portion of the profits.  Now that the time has come when he will receive less and by the process of adjustment get only his exact portion, he for the first time objects and seeks to have applied to him a new plan which will mature his stock eighteen months earlier.  This is not equitable, it is not honest.  It is unfair to every other stockholder.

The legal aspect of the defendant's contention is no better than its moral aspect.  If the plan was just it was binding and that is the end of it.  A court may well say that the plan adopted must be a just one, but having done that it has reached the limit of the proper exercise of its power.  It should not and I submit that with propriety it cannot say that one plan for the management of corporate business is better than all others and that that one shall be adopted.  The division of profits and the maturing of the stock of a building association are subjects for corporate action.  If the plan adopted is not unjust, with its wisdom a court has nothing to do.  If it is unjust the remedy is by bill under which the rights of all the stockholders may be considered and adjusted on a plan equitable to all.  If the plaintiff, without proof of fraud or unfair dealing, is permitted to take the management of the affairs of the association out of the hands of its stockholders and have them submitted to a jury for supervision and change, any other borrower may do the same, and instead of one uniform plan selected by those who are to be affected by it there may be as many as the wisdom or whim of a jury may devise.

There is no conflict between these views and the opinion of this court when this case was before it in 1891.  The decision reported in 139 Pa. 480 goes no further than to say that it was competent for the defendant to prove that his stock had matured.  He may certainly do that, but the rule by which it is to be determined is the rule of the association—not a new rule.

For the reasons stated I do not concur in the judgment rendered in this case.

MR. JUSTICE MITCHELL concurred in the dissent.