Henry Heymann Building and Loan Association, Appellant, v. Denney.

Argued October 12, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*B. I. deYoung,* with him *B. Leon Brenner,* for appellant.

*Edward E. Dicker,* for appellee.

OPINION BY PARKER, J., January 27, 1938:

The main question involved in this appeal is whether a loan made by the defendant, William F. Denney, from the Henry Heymann Building and Loan Association was liquidated by the maturing of installment stock in that association pledged as collateral for the repayment of the loan.

In 1929 the defendant borrowed from the plaintiff $8,000, evidenced by judgment bonds of $3,000 and $5,000 and pledged as collateral installment stock standing in the name of defendant and intended to have a matured value of $12,000 or $200 per share. On September 9, 1935, plaintiff caused judgments to be entered on the bonds for the face amount of each, and on petition of defendant the judgments were opened and the defendant was let into a defense. The defendant claimed that the loan was discharged and there was a balance due him. The two cases were consolidated and the issue was presented to a jury when the trial judge properly, as we have concluded, directed a verdict for defendant for $1,440.

On trial the defendant first asserted that he made verbal demand in May, 1932 of the association that his installment stock be applied to the repayment of his loans and that the balance be paid to him in cash. This demand was denied by the plaintiff's witnesses. Viewing this demand in a light most favorable to the defendant, it presented a question of fact for the jury and we will therefore not give it further consideration as there is another sufficient and adequate defense.

It further appeared that on October 17, 1932 the pledged stock had attained a book value of $200 per share, when the directors of the association passed a resolution, printed in the margin,[1] dealing with the series of which that stock was a part.

[1] "Whereas, because of depressed and changing real estate market, it is difficult to ascertain with any degree of accuracy, the value of the real estate and mortgage loans, and consequently

We think it clear that the resolution taken with the circumstances proved by plaintiff's secretary and the books of the company amounted to a declaration by the board that the stock was in fact matured. The passbooks which were the only evidence of ownership were in the possession of the association and were produced by it on trial; no stock certificates were issued by this association. On November 21, 1932 there was delivered to the defendant by the secretary of the association checks signed by its treasurer aggregating $600 and the proceeds were collected by defendant. This payment represented twenty per cent of the difference between the matured value of the stock, $12,000, and the balance due on the loan, $9,000, consisting of $8,000

---

it is difficult to ascertain the exact value of the stock of the Association, and

"Whereas, the 27th Series and the 37B Series of the capital stock of the Association has reached a book value of $200.00, which value includes the dues paid per share and profits thereon, and

"Whereas, the Association does not have sufficient funds to pay $200.00 per share, and consequently these series cannot be declared matured, and

"Whereas, the Board of Directors feel that it is in the best interests of the Association not to write off further at the present time, the value of the real estate and mortgage loans, so as to require further and continued payments by the stockholders of these series, and feel that it is for the best interest of the Association that these series be retired, and the stockholders thereof receive some payment,

"Now Therefore, Be It Resolved:

"That the Association retire the 27th Series and Series 37B of the capital stock of the Association by cash payment of Twenty per cent (20%) of the present value of the said shares, and thereafter to make further payments as funds shall warrant, until the full value of these series be paid, reserving the right to the Association, should there be further losses and further depreciation in the assets of the Association, to adjust the value of the series being retired, and Provided Further, that the Association reserves the right to apply any dividend on any indebtedness to the Association."

principal, $960 dues and interest, and $40 fines. At the same time settlements were made with other stockholders in the series affected. No dues or interest on the loan were thereafter charged against the defendant on the books of the association. The resolution with reference to retiring the stock was not passed until after the association had appointed expert accountants to examine the books and had directed an appraisement of its assets to be made. Demand was not made on defendant for the payment of principal or interest until September, 1935, about the time judgments were confessed.

It is also important to observe that there was not a scintilla of evidence to show that the association was insolvent in 1932. The banking department ordered a segregation of dues in May, 1933 and in 1935 proceedings were had under §621, Act May 5, 1933, P. L. 457 (15 PS 1074-621) for a reduction of the association's liability to its stockholders by forty per cent and the impairment was then fixed as of May, 1933. As we pointed out in *Homer B. & L. v. S. Makransky Sons,* 126 Pa. Superior Ct. 90, 92, 190 A. 179, there is an all important difference between the rights of stockholders in a solvent building and loan association and the relative rights of those in an insolvent association. The cases relied upon by appellant dealt with insolvent associations or with situations where there were attempted withdrawals before maturity.

If insolvency actually exists when a shareholder's shares are declared matured, this may be shown by a proceeding in equity *(Callahan's Appeal,* 124 Pa. 138, 16 A. 638; *Christian's Appeal,* 102 Pa. 184) ; "so, also, upon clear proof of a mistake or fraud resulting in an untimely declaration of maturity, relief will be given against the effect thereof, though defendant was not insolvent at that time": *Sperling v. Euclid B. & L. Assn.,* 308 Pa. 143, 148, 162 A. 201; *Kurtz v. Bubeck,* 39 Pa. Superior Ct. 370. The liquidation of the loan as

claimed by the defendant was in October or November, 1932 at a time when we must assume the association was solvent and at a time when there is no evidence of a depreciation in values rendering the settlement inequitable as respects the rights of other shareholders.

The principal argument of the appellant is to the effect that the resolution of October, 1932 was to retire the stock in question and not to mature it. We are unable to see any force in the distinction attempted to be drawn between the words "retired" and "matured." As a matter of fact, if we give these words their ordinary everyday meaning, stock would be said to be first matured and then retired by payment of the amount due on the shares.

There is one respect in which the meaning of this resolution is clear and that is that the board of directors decided that the stock had reached a book value of $200 and that it was "in the best interests of the Association not to write off further at the present time the value of the real estate and mortgage loans," and that it was for the best interests of the association that the shares in the series affected be retired. Here was a clear declaration by the board of directors that the shares had reached a value of $200, a conclusion arrived at several months after steps had been taken to have the books audited and appraisements made and after the setting up of a contingent fund of $2,830.17 and a reserve for depreciation of $21,924.22. We do not see how a maturity could have been declared in any clearer terms than by saying that the shares had reached a value of $200 and it made little difference whether the board defined the situation as a retirement or a maturity.

As was said by Chief Justice PAXSON in *Tyrrell L. & B. Assn. v. Haley,* 139 Pa. 476, 481, 20 A. 1063: "But, when the stock has fairly matured, I am unable to see what right the association has to recover a judgment against one of its stockholders for the amount of his loan. ...... If his series had matured, he was en-

titled to stop paying, and to rely upon the association surrendering his securities when the proper time arrived. If, instead of doing this, the association brings suit upon his mortgage [bond], he can surely set up an equitable defence, and show that his stock has matured."

The outstanding feature of building and loan associations as they are conducted in this Commonwealth is the scheme whereby a loan is cancelled by the maturity of installment stock. When the stock has so matured the main purpose for which the building and loan association is organized and the reason for the borrower becoming a member has been accomplished. As we have shown, the defendant had a right to assume without action by him that the association would liquidate his loan when the stock became of the value of $200 per share. Consequently, when defendant showed that the stock had in fact matured that was a complete answer to plaintiff's claim and it was a support for the defendant's counter claim. Not only did plaintiff's books show that the stock had in fact matured, but the directors acting officially so declared. At the very least, this cast upon the plaintiff the burden of showing that the books did not reflect the true value of plaintiff's business and that there was fraud or mistake in the action of the directors in declaring such maturity.

Considering the resolution, the construction we have placed on the writing is that which was adopted by plaintiff's own officers. Immediately after its passage they rendered a statement to the defendant showing the $9,000 of obligations as a set-off to the $12,000 matured value and defendant was paid twenty per cent of the balance in cash. This was the action of both the secretary and the treasurer. Such construction by the parties affected by the writing has much weight and at times is controlling.

The plaintiff in his brief suggests that this action of the officers was ultra vires, that the officers had no right to act except by direction of the board of directors. This overlooks the fact that by the law of the state the association was compelled to allow the cancellation of the loan and to pay the matured value for the excess stock when funds were available for that purpose. Consequently, when the board declared the stock to be worth $200 per share the secretary and treasurer were but obeying law in so liquidating the stock and applying such funds as were available to the payment of the value of the stock in excess of the loan. It was but a routine action which such officers are by virtue of their position required to perform. Not only so, but the board of directors rendered annual statements for the years 1932 and 1933 showing this series as a retired series and showing a liability for the amounts due on that account.

In directing a money verdict for the defendant the court allowed the defendant only sixty per cent of the balance due him and the defendant does not complain. In fact, however, the plaintiff failed to show that there was any impairment as of 1932. Certainly the plaintiff cannot complain.

While in settling the respective rights of stockholders in a building and loan association they are treated rather as partners than stockholders, if there was an injustice done here to other stockholders the remedy was as pointed out in *Tyrrell L. & B. Assn. v. Haley,* supra, for the association to show, if such was the fact, that the stock value was impaired in 1932 and that the stock in fact did not mature as the defendant has shown that it did. "This is no hardship, as it has in its possession, and under its control, all the books, papers, and other evidence which bear upon the actual value of the stock. It can show how the profits have been divided, and, if they have been divided contrary to

law, the error can be corrected by the court. Such associations, while useful in many instances, are not above the law, and cannot arbitrarily dispose of the property of their members": *Tyrrell L. & B. Assn. v. Haley,* supra, p. 482.

The basic facts having been developed from the plaintiff's pleadings and the undisputed testimony of its officers, the questions presented were for the court.

Judgment affirmed.