Decree affirmed, and appeal dismissed at the costs of the appellants.

# Appeal of Christian et al.

1. When a building association has become insolvent and made an assignment for the benefit of creditors, the treasurer is entitled to be reimbursed as a general creditor, for moneys paid by him on orders drawn upon him before the assignment, and for which the assignee has refused to allow him credit in the settlement of his account as treasurer.

2. When a building association has become insolvent, in winding up its affairs, after deducting expenses incident to the administration of its assets, the general creditors, if any, should be first paid in full, and the residue of the fund should be distributed pro rata among those whose claims are based on the stock of the association, whether they have withdrawn and hold orders for the withdrawal value of their stock or not. Both claims are equally meritorious, and in marshalling the assets neither class is entitled to priority over the other.

3. While in a qualified sense withdrawing stockholders may be considered creditors of the association, their rights, as against those with whom they have been associated as stockholders, are very different from those of general creditors whose claims are based wholly on outside transactions.

4. *Semble*, that withdrawing stockholders should not be required to share losses resulting from bad investments, made after they have withdrawn from the association as active members thereof.

January 23rd 1883. Before MERCUR, C. J., GORDON, PAX-SON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Court of Common Pleas No. 4, of *Philadelphia county :* Of July Term 1882, No. 199.

Appeal of Samuel J. Christian and Henry Van Beil from a decree of said court, dismissing exceptions to, and confirming the report of an auditor appointed to audit and adjust the account of the assignee of the William Brown Building and Loan Association, and to report distribution of the balance in the hands of said assignee.

The following facts appeared before the Auditor : The William Brown Building and Loan Association was duly incorporated December 2nd 1872. Towards the close of 1878 it appeared from its annual report that its affairs were not in a prosperous condition. Prior to January 1878, the association had made loans upon properties and securities of little or no value. A number of stockholders had withdrawn, or given notice of their withdrawal, some of them at a meeting of directors held prior to the annual meeting for 1877, in favor of whom orders were afterwards drawn on the treasurer according to the valuation of shares fixed at the annual meeting in November 1877. Others gave notice of withdrawal at a director's meeting in December 1878, for whom no orders were drawn on the treasurer.

At a special meeting of the stockholders on February 28th 1879, called for the purpose of devising measures for closing up the affairs of the association, after several stockholders had given notice of their intention to withdraw, " on motion it was agreed that every stockholder be considered as giving notice to withdraw to-night, and that the committee, in connection with the officers, be intrusted to make out a statement of the amount actually due each stockholder." Every stockholder present voted for the motion, but some were absent.

A number of the stockholders continued to act as such at meetings of the association held March 8th and April 4th 1879, the latter meeting being more than thirty days after the adoption of the above motion.

An assignment for the benefit of the creditors of the association was executed May 2nd 1879.

The charter of the association contained the following provision :—Article VII. " Withdrawals.—Any stockholder wishing to withdraw from the association shall give at least one month's notice to the directors, when he or she shall receive the amount paid in by him or her, first deducting his or her proportion of the expenses, and all charges, fines, etc., against him or her. In case a number of members wish to withdraw at the same time, the first notice shall always take precedence

provided, that at no time shall more than one half of the funds in the treasury be applicable to withdrawing members without the consent of the board of directors."

Article X. of the printed by-laws reads as follows : " Withdrawals.—Any stockholder who has not received a loan may withdraw from this association by giving one month's notice to the board of directors, when he or she shall be entitled, during the first year, to receive the amount of dues actually paid in, first deducting all fines and charges, and the second year shall be allowed at the rate of six per cent. per annum in addition to the dues paid in ; and thereafter the stockholders shall have the right to assess the value on said stock to enable members to withdraw. Provided, That at no time shall more than one-half of the funds in the treasury of the association be applicable to the demands of withdrawing stockholders without the consent of the board of directors."

There were three classes of claims presented before the Auditor.

First.—The claims made by the late treasurer of the association, Mr. E. F. Stewart, to be reimbursed for moneys which he had paid upon orders drawn upon him before the assignment, and which the assignee refused to allow him credit for in the settlement of his accounts as treasurer.

Second.—The claims made by persons who held orders on the treasury for withdrawn stock, and which had been issued more than six months before the assignment was made, including therein the claims of those who gave notice of their intention to withdraw at the meeting of the directors in December 1878, more than four months before the date of the assignment.

Third.—The claims of those who were, or had been stockholders, not included in the second class.

The Auditor first allowed the claim of the treasurer ; and the balance of the fund in his hands he awarded, pro rata, to the stockholders of the second class, on the authority of the United States. B. & L. Ass. *v.* Silverman, 4 Norris 394. He disallowed the claims of the stockholders of the third class on the ground that they had failed to comply with the charter, in giving notice of withdrawal from the association.

To the report of the auditor, Christian and Van Beil excepted, on the ground that he erred ; in holding (1) that as stockholders who gave notice of their intention to withdraw, at the meeting on February 28th 1879, they had not given the thirty days' notice required by the charter ; (2) that the resolution adopted at that meeting failed to make those present, creditors, after thirty days had passed ; (3) that a notice of withdrawal given at a stockholders' meeting was not a legal notice ; (4) in refusing to Christian and Van Beil a distributive

share of the balance in the hands of the assignee; or in making any distribution of said balance, unless they received a pro rata share with all who had at any time been stockholders in the association.

These exceptions were dismissed by the court, THAYER, P. J., delivering the opinion, whereupon Christian and Van Beil took this appeal, assigning for error the dismissal of their exceptions.

*Edward H. Weil,* for appellants.—The notice of withdrawal given by the stockholders in adopting their resolution at the meeting of February 9th 1879, was a legal notice, within the provisions of the Act of April 12th 1859 (P. L. 544.) The association must be bound by the acts of its board of directors, not by the separate acts of its individual members : Stoystown Road Co. *v.* Craver, 9 Wright 386; Allegheny Co. *v.* Moore, 14 Norris 412. The Auditor's ruling introduces a preference in the distribution of an insolvent estate, whereas a just distribution gives an equal share to all stockholders. Notice of withdrawal does not give one stockholder preference over another in cases of *insolvency;* this case therefore is not governed by the United States Building and Loan Association *v.* Silverman, 4 Norris 394. That case decided that a withdrawing stockholder could not be put off indefinitely. The award by the Auditor, in the present case, of their full claim to some stockholders, and of nothing to others, is in direct conflict with the principle of that decision ; a withdrawing stockholder is a quasi partner, who must share the losses in case of insolvency, and is entitled only to a pro rata distribution of the funds in the hands of an assignee : Estate of the National Savings Loan and Building Association, 9 W. N. C. 79. Order holders, for withdrawn stock in an insolvent building association, are entitled to no preference in distributing its assets, over stockholders who have not withdrawn their stock : Appeal of Criswell et al., 12 W. N. C. 489.

*Robert P. Dechert* (with whom was *J. Quincy Hunsicker*), for appellees.—The notice of withdrawal of the stockholders given at the meeting in February 1879, was not legal because it did not comply with article 7 of the charter of the association. They could not by mere resolution alter the fundamental law. They waived their right also by acting as stockholders at subsequent meetings. The association was not insolvent at the time they gave notice of withdrawal, for the losses on its loans did not occur until months after the date of the execution of the assignment. The appellees, on the other hand, gave proper notice of withdrawal, under the charter, and thereby became creditors of the association, under the decision

in Building Association *v.* Silverman, supra, and the orders for payment were prima facie acknowledgments of the amounts due them as such.

Mr. Justice STERRETT delivered the opinion of the court, March 26th 1883.

The fund for distribution represents the assets of a confessedly insolvent building and loan association which executed a voluntary assignment of all its property and effects for the benefit of creditors. Those claiming to participate in the fund were classified by the auditor as follows :

1st. The late treasurer of the association, who claims, as a general creditor, to be reimbursed for moneys paid on orders drawn upon him before the assignment and for which the assignee refused to allow him credit in the settlement of his account as treasurer, amounting to $789.74.

2d. Holders of orders on the treasurer, issued to withdrawing stockholders more than six months before the date of the assignment ; and also stockholders who gave notice of their intention to withdraw several months prior to the assignment, but received no orders for the amount of their stock.

3d. All other stockholders not included in the second class.

For reasons given at length by the learned auditor, the items of claim embraced in the first class were rightly allowed and scheduled as preferred claims. The several payments, for which credit was claimed by the treasurer, were made on orders regularly drawn upon him as such. His relation to the association was therefore similar to that of a general creditor ; and, in the absence of any other claimants of that class, he was entitled to be fully paid in preference to either of the other classes, whose claims were founded upon the relation which they sustained to the association, as stockholders thereof. The propriety of the decree, in that particular, has not been seriously questioned, nor indeed can it be. The principal ground of complaint is that after satisfying the treasurer's claim, the residue of the fund was distributed pro rata among claimants of the second to the exclusion of the third class. That result was reached by holding that members of the association who had given the requisite notice of withdrawal, thereby ceased to be stockholders and became creditors to the extent of the withdrawal value of their stock as evidenced either by orders on the treasurer or by the books of the association, and consequently their claims are superior to those of their fellow stockholders who had not given the requisite notice of withdrawal. In this we think there was manifest error. While, in a qualified sense, withdrawing stockholders may be considered creditors of the association, their rights, as against those with whom they have

been associated, are very different from tho e of general creditors whose claims are based wholly on outside transactions. If the association has been prosperous, they have a right, under certain limitations and restrictions, to demand and receive their proportionate share of the accumulated fund, but if bad investments have been made or losses have been sustained before actual withdrawal, they must bear their just proportion thereof. That right, as was held in United States Building and Loan Association *v.* Silverman, 4 Norris 394, may be enforced by appropriate proceedings at law. But, the right of withdrawal and the extent to which it may be exercised presupposes that at least a relative proportion of the assets will remain for the benefit of those who continue to be active members of the association.

When a building association has failed to fulfill the object of its creation and has become hopelessly insolvent, it cannot be justly or equitably wound up on any other principle than that above suggested. After expenses incident to the administration of its assets are deducted, the general creditors, if any, should be first paid in full, and the residue of the fund should be distributed, pro rata, among those whose claims are based upon stock of the association, whether they have withdrawn and hold orders for the withdrawal value thereof, or not. Both classes are equally meritorious, and in marshaling the assets neither is entitled to priority over the other. The claims of each are alike based upon their relation to the association as members thereof. Orders issued to withdrawing stockholders are merely evidence of their interest in the assets remaining after paying general creditors. As was well said by the learned president of the Common Pleas in the Assigned estate of National Savings, Loan and Building Association, 9 W. N. C. 79, such an organization is, in fact and in law, a partnership, with corporate rights, in which every stockholder is a member; and while it may be true that a stockholder may recover judgment against the corporation, and thus become, in a certain sense, a creditor thereof, he is nevertheless not a creditor within the meaning of our assignment laws. There is also great force in his suggestion that the appropriate method of administering the assets, remaining after payment of general creditors, would be through a receiver. While such a course would be strictly regular, the same result may be more directly and equally as well attained, by the course pursued in this case.

It may be observed that claimants of the second class should not be required to share losses resulting from bad investments made after they withdrew from the association as active members thereof; but it does not appear that any such investments were made after they gave notice of their intention to with-

[City of Philadelphia *v.* Ridge Ave. Railway Co.]

draw. On the contrary it appears that the injudicious investments, which afterwards developed and in the end resulted in heavy losses and consequent bankruptcy, were made before.

In view of what has already been said, it is unnecessary to consider several minor questions which arise upon the assignments of error.

We are of opinion that the residue of the fund, remaining after paying the claims of the treasurer, should be distributed pro rata among the claimants of the second and third classes.

Decree reversed, as to that part of the fund distributed to the second class of claimants, and record remitted with instructions to distribute the same in accordance with this opinion. Costs to be paid out of the fund.