of Progress v. Grand Lodge of the Independent Order Sons of Progress, 14 W. N. C. 31.

It has been held that though the applicant did not intend to deceive, if, as a matter of fact, its name was calculated to deceive, it must be restrained by injunction: Newby v. Ry. Co., 1 Deady, 609; Higgins Co. v. Higgins Soap Co., 144 N. Y. 462 (39 N. E. Repr. 490); Fort Pitt B. & L. Assn. v. Model Plan B. & L. Assn., 159 Pa. 308; North Cheshire & Manchester Brewing Co., Ltd., v. Manchester Brewing, Ltd., Law Reps. App. Cases (1899), 83.

The rule is not confined to commercial corporations: First Presbyterian Church of Harrisburg, 2 Grant, 240; Penna. Baptist State Convention v. Penna. Baptist State Convention (colored), 53 Pittsburg Legal Jour. 74.

PER CURIAM, May 21, 1909:

The able and earnest argument of appellant's counsel has not convinced us that the order complained of was not based upon sound legal discretion. On the contrary, the opinion filed by the learned judge below shows so satisfactorily that it was that we do not deem it necessary to add anything further to the discussion.

The order is affirmed.

---

## Kurtz v. Bubeck.

*Building and loan associations—Overpayments on matured series—Equity.*

1. Where a building and loan association has become insolvent by mistaken overpayments to members as a number of series matured, the assignee for the benefit of creditors of the association may maintain a bill in equity in which he makes all of the members of a particular series defendants, for the purpose of recovering from them the overpayments which they received.

2. In such a case the jurisdiction of equity is established by reason of the intricate and complicated accounts involved, by the large number of persons liable, and by reason of the mutual mistake of the parties and the unintentional misapplication of trust funds.

Argued May 3, 1909. Appeal, No. 7, April T., 1908, by William Ellwood, from decree of C. P. Jefferson Co., Aug. T., 1905, No. 7, on bill in equity in case of T. M. Kurtz et al., Assignees of Punxsutawney Mutual Building & Loan Association, v. John J. Bubeck and William Ellwood et al. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Bill in equity for an account and to compel repayment of overpayment.

REED, P. J., filed the following opinion:

### FINDINGS OF FACT.

1. The said Punxsutawney Mutual Building and Loan Association was incorporated May 21, 1885, under the laws of the commonwealth of Pennsylvania, and carried on business as such association until February 3, 1904, when it made an assignment of all its property to the plaintiffs in trust for the benefit of creditors, under the provisions of the Act of June 4, 1901, P. L. 404.

2. That at the time of the assignment by it, the said association was insolvent in that it was unable to pay back to its stockholders the amount of their contributions, dollar for dollar.

3. The cause of its insolvency was due to erroneous methods of bookkeeping in past years, to wit: the failure to charge off in the general accounts of the business the profits applied in maturing the stock of borrowing stockholders in the several matured series, which occasioned an apparent balance of accumulating undivided profits in excess of the actual balance of profit earned by the association, and a consequent overpayment and overcredit of profit to every subsequent series when matured and canceled.

4. This error began with the maturity of the first series, and was continued with the maturity of the following series until the thirteenth series, overpayments and overcredits being made to each series from the second to the fifteenth.

5. No attempt has been made to collect the overpayments

and overcredits in the second, third, fourth and fifth series, for the reason that more than six years had elapsed between the dates of payment and the date of the assignment by said association to the plaintiffs as stated, and by reason thereof a right of action by the plaintiffs to recover the same was barred by the statute of limitations.

6. Suits have been brought from time to time, in the form of bills in equity, against those who were stockholders at maturity in each series from the sixth to the sixteenth, setting forth, inter alia, the history of the transactions, the names of the stockholders, the dates and amounts of payment or credit, the actual value of the stock as determined by expert accountants since the assignment for the benefit of creditors was made, the excess of overpayment or overcredit accordingly as made and allowed to each stockholder, nonborrowing or borrowing, the demand for repayment made by the assignees for the benefit of creditors, the refusal on the part of the defendants to repay, the assertion of the necessity of a court of equity to hear and determine the issues involved, and making prayer for relief as fully set forth in the copy of the bill hereto attached, to which the defendants have filed demurrer and have made answer, copies of which are also attached hereto and made a part hereof.

7. The eighth series of stock, the holders of which at maturity are the defendants in this bill, was declared matured August 22, 1899, when the shares were computed by the officers of the association to have reached the value of $200 per share, whereupon a division was made among the several series, and to the stockholders in the eighth series was paid or credited the sum of $200 for each share of stock held by them, and to the borrowing stockholders their securities were returned with the same fully satisfied and discharged of record, and thereupon the eighth series ceased and determined.

8. After the appointment of the plaintiffs as assignees for the benefit of creditors, expert accountants were employed, who made a thorough examination of the business of the association throughout its corporate existence, and found, as shown at the time of their examination, that the real value of the stock in the eighth series at the time it was matured was $179.75, wherefore

there was appropriated to the said eighth series, and divided among its stockholders, the sum of $20.25 per share in excess of its real value, amounting in all to $4,675.50 to nonborrowers, and $2,369.25 to borrowers.

9. The following named defendants have been legally served with the bill in this case, or have appeared and joined in the demurrer or answer filed thereto, or have otherwise submitted themselves to the jurisdiction of the court, and admit that they were paid, August 22, 1899, and severally received, over and above the value of their stock at that date, the amounts attached to their names respectively, on the supposition and belief of all parties concerned, that their said stock at that date was fully matured, and therefore of the value of $200 per share, when in truth and in fact it was not fully matured, and was only worth $179.75 per share at that date, so that the overpayment or overcredit to each one of them, on the number of shares of stock owned and held by them respectively, was as follows: John J. Bubeck, $20.25; Elizabeth Cooper, $20.25; J. Grant Dunmire, $60.75; Martha C. Davis, $40.50; Jacob Dunmire, $182.25; William Elwood, $101.25; Elizabeth Fackiner, $40.50; David Haag, $101.25; J. N. Haag, $60.75; Philip Haag, $405; Mrs. E. E. Hummel in trust, $141.75; Laura E. Hamilton, $384.75; John Lang, $101.25; Lunetta J. Miller, $20.25; Levi McGregor, $405; W. A. Neal, in trust, $20.25; Elizabeth North, $202.50; Lillian North, $81.00; J. F. Oswald, $405; A. C. Robinson and R. J. Robinson, $101.25; A. C. Robinson, $101.25; A. C. Robinson and Brother, $60.75; Hiram Reese $40.50; Samuel A. Rinn, $101.25; E. L. Raifstanger, $202.50; G. A. Weiss, $20.25; Mary Weber, $101.25; P. J. Weber, $101.25; Philip Weaver, $20.25; W. W. Winslow, $101.25; J. Boyd Allison, $81.00; J. L. Allison, $121.50; Lalia Brauns, $40.50; Rachel L. Boucher, $40.50; S. J. Coulter, $101.25; Theodore Deutman, $20.25; J. Harry Evans, $20.25; James Gribben, $81.00; J. S. Gray, $20.25; Nancy Gray, $40.50; Irvin N. Graffius, $20.25; Fred Jordonnia, $20.25; John H. London, $101.25; John McQuown, $20.25; H. W. McClincy, $40.50; Hannah K. Marshall, $40.50; Elizabeth M. North, $20.25; W. E. Rodgers, $40.50; J. F. Sprankle, $60.75; Esther L. West,

$121.50; Hettie Whitesell, $20.25; the following of whom have paid the amounts claimed in full, and have received receipts therefor, abiding the result of this suit: Philip Haag, Levi McGregor, Theodore Deutman, W. W. Winslow, Jacob Dunmire and J. Grant Dunmire.

10. Demand was made on each of said defendants, July 15, 1905, for a return of the amount of the overpayment or overcredit, made or given to him as aforesaid, which was refused, and thereupon this bill was filed to compel payment of the same, with interest thereon from the date of said demand.

11. On August 22, 1899, there were in existence and in active operation twenty series of stock, from the eighth to the twenty-seventh inclusive, the first seven series having been matured and canceled.

12. Upon the maturing of the eighth series, which was declared by the board of directors in accordance wth the figures of the secretary and the auditors, the nonborrowing shares were paid in full and the borrowing shares were canceled, the bonds and mortgages given as security for advancements to borrowers being satisfied of record; whereupon the said series ceased and determined as provided in art. XVI of the by-laws.

13. Thereafter, prior to the annual election of each year, and from time to time prior to the issue of a new series of stock, the auditors of the association audited the books and accounts, which audit was reported to the stockholders, with a faithful and ample exhibit of the state of the treasury and the value of the shares as indicated by the books, which report being approved was recorded in the minutes of the association, published and distributed among the stockholders for their information as to the financial condition of the association, as provided for and in accordance with sec. 6, art VIII of the by-laws.

14. Each of said reports of the auditors to the stockholders after August 22, 1899, showed the maturing and canceling of the stock of the eighth series, which reports were duly approved by the directors and stockholders at their regular meetings.

15. All of the property, real and personal, belonging to said association on August 22, 1899, prior to the maturity of the eighth series, was retained by the said association for the bene-

fit of the remaining series of stock, except such portion of the general assets of the association as the audit showed to be the distributive share of the said eighth series on said date which portion was set apart to said eighth series, and was found to be sufficient to mature the shares in said series.

16. At the time the eighth series was matured the association was solvent, and there were no general creditors; nor was there any outside indebtedness incurred prior to August 22, 1899, for which the eighth series was liable.

17. During the time the several series from the first to the eighth were in active operation, there was paid out by the association upwards of $140,000 on account of withdrawing stockholders, who were paid the withdrawal value of their stock according to the by-laws, and as represented by the published annual report as belonging to all the other stockholders in the several series mentioned.

18. About August, 1902, the secretary of the association discovered that an erroneous method of bookkeeping had been carried on for a number of years during the incumbency of his predecessor in office, and that excessive profits had been paid and credited on all series from the second to the thirteenth inclusive, but that the association was still solvent, which facts he made known to the president, the treasurer and two directors of the association, and then resigned his office. Thereupon a new secretary was elected, but he was not informed of the situation, and the association continued to transact business until January, 1904, when the new secretary, having discovered the facts, informed the solicitor and the board of directors, when steps were at once taken to make an assignment and wind up the business of the association. Up to this time none of the defendants named in this bill were made acquainted with the condition of the association.

19. The defendants in this bill, being stockholders in the eighth series, fully complied with the by-laws of the association, and made payments as therein provided until the directors, under sec. XVI of the by-laws, declared the stock matured, August 22, 1899, and the said eighth series then ceased and determined in accordance with the by-laws.

20. The accounts, books, titles, securities and other papers and property of the association were in the exclusive custody of the officers of the association, who were chosen annually by vote of all the stockholders, borrowers and nonborrowers, all of whom were eligible to vote and to hold office. No stockholder, however, ever demanded and was refused the free opportunity and privilege of examining the books, accounts, etc., at any time, personally or with the help of experts, prior or subsequent to the said assignment for the benefit of creditors. Two examinations were made by the state banking department examiners during the period covered by these suits.

21. Since the maturing of the stock in the eighth series, its cancellation and the satisfaction of the bonds and mortgages of borrowing stockholders in said series, up to the date of filing this bill, the relation of the parties have been altered in the manner indicated by the facts already stated, and many of the former stockholders are dead, gone from the jurisdiction, insolvent, or otherwise immune to legal process.

22. The amounts of the overpayments and overcredits to stockholders in the second to the fifteenth series inclusive, as shown by the schedules submitted by the expert accountants, which are not called in question, are not in any case sufficient to consume or demand the refunding of the entire profit paid or credited to the stockholders in the several series. The present condition of the business of the association, however, is such that, unless something is recovered in the various bills in equity identical with this one, less than fifty per cent of the amounts paid in by nonborrowing stockholders whose accounts were alive at the time of the assignment for the benefit of creditors can be realized for them in the final distribution.

23. The defendants who have been brought within the jurisdiction of the court are severally indebted to the plaintiffs in the amounts specified in paragraph nine of these findings, and are liable in this proceeding to a decree for the refunding, or payment to the plaintiffs, of the said sums paid to them respectively in excess of the amount to which they severally were entitled, August 22, 1899, on the shares of stock held and owned by them at that date.

### FINDINGS OF LAW.

1. The assignees stand as trustees for all existing stockholders, and such former stockholders as may be found still to be interested in the association, and it is necessary that they secure a legal determination as to the standing of each stockholder in the eighth series of said association as of August 22, 1899, when that series was matured. The accounts between the said association and the said defendants are so intricate, complicated and voluminous that it would be impracticable to try the question of the said defendants' indebtedness by a suit at law, and inasmuch as a court of equity is better adapted to hear and determine the issues involved in such way as to secure justice to all parties in interest, the contention that this court is without jurisdiction cannot be sustained.

2. A court of equity has jurisdiction to hear and determine the controversy between the plaintiffs and defendants.

3. The proper parties have been made defendants.

4. The association was legally insolvent on February 3, 1904.

5. The association had a legal right to make an assignment for the benefit of creditors.

6. Overpayments and overcredits made under a mistake of fact as to the actual condition of the accounts of the association are recoverable.

7. The overpayments and overcredits being an unintentional misapplication of trust funds, restoration is under the control of a court of equity.

8. The plaintiffs have established their right to the relief prayed for in their bill.

9. The defendants must refund the amounts of overpayments and overcredits received by them.

10. The plaintiffs are entitled to a decree for the amounts demanded, with interest thereon from July 15, 1905, and costs of suit.

### OPINION.

The questions raised in this case are precisely the same that were raised and determined in the bill filed at No. 3 of August Term, 1904, to compel the stockholders of the sixth series of

the stock, issued by this association, to refund or pay back the difference between the value of their stock, at the time of payment, and its matured value, the latter having been paid to them through an error of bookkeeping, whereby their stock was matured at a date earlier than it should have been, the same as in the present case. I have again given these questions careful consideration, but am unable to reach any other conclusion than the one reached in the case referred to, and therefore adopt the opinion delivered in that case as my opinion in this case. It seems to me that the plaintiffs' right to recover from each defendant the excess sum paid or credited him is so clear that there ought to be no question about it. Numerous reasons, however, have been suggested why they should be relieved from such payment, and why this bill should be dismissed. In the first place it is contended that the plaintiffs' remedy, if any exists, is by an action of law against each defendant, and that a court of equity is without jurisdiction to hear and determine the controversy. Conceding that an action at law would lie against each defendant, it does not follow that a court of equity may not exercise its jurisdiction. It is not sufficient to induce equity to refuse its aid to a suitor that he may also have a remedy at law: Gray v. Citizens' Gas Company, 206 Pa. 303. The remedy at law must be complete and adequate to meet all the requirements of the case: Penna. Railroad Co. v. Bogert, 209 Pa. 589. The complicated character of the accounts to be considered in this case; the fact that the cause of complaint is common to all the defendants; that their liability to refund arises out of the same facts and circumstances, and is to be determined upon the same principles of law and equity, and that more than eighty actions at law would be required to reach the result that can be more conveniently reached in a single suit in equity, and substantially at less than one-eighth part of the costs and trouble, is sufficient for equity to maintain its jurisdiction: Bank of United States v. Biddle, 2 Parsons, 31; Bank of Kentucky v. Schuylkill Bank, 1 Parsons, 180; Bank of Virginia v. Adams, 1 Parsons, 534; Anderson et al. v. Lehigh Coal & Navigation Company et al., 23 Pa. C. C. Rep. 343; Simpson v. Summerville, 30 Pa. Superior Ct. 17; Appeal of The Brush

Electric Co. et al., 114 Pa. 574. It is also contended that the bill (1) is multifarious by reason of the joinder of too many defendants, and (2) that it is defective for want of parties defendant. Where the cause of complaint against the defendants, as in this case, is the same as to all, and where all are interested in the same right, and the defense set up is common to all, and the testimony, proofs and decree are alike as to all, a bill filed against a number of defendants so situated is not multifarious: The Cumberland Valley Railroad Company's Appeal, 62 Pa. 218; Rafferty et al. v. Central Traction Co., 147 Pa. 579. In my opinion all persons materially interested have been made parties defendant to the bill. All parties holding stock in the eighth series have been named as defendants, and it is not apparent why stockholders in other series, to whom overpayments and overcredits were also made, should be named as defendants in this bill. As was said by the learned counsel for the plaintiffs: "It is evident that the recapitulation of the accounts and distribution of profits in the association on August 22, 1899, at which time twenty series were in existence, had then and has now only a passing and inconsequential interest to the stockholders in every series except the eighth, which on that day was matured and retired." Each series in its relation to the corporation is a separate entity, and the accounting on August 22, 1899, affects only the eighth series. It had no final or binding effect upon any other series. To bring in as defendants the several hundred persons holding stock in other series could serve no useful purpose, and the bill is not rendered defective by reason of the failure to do so: Wood v. Dummer, 3 Mason, 308; Equity Rule No. 22 of the Supreme Court of Pennsylvania. It is further contended that there can be no insolvency of a building and loan association, and that the plaintiff association could not make an assignment for the benefit of creditors. These questions do not properly arise in this proceeding, but if they did I would have no hesitancy in ruling in favor of the affirmative of both propositions. Building and loan associations are in a class by themselves, and it has been held that they are insolvent when they cannot pay back to their stockholders the amount of their contributions, dollar for dollar: Endlich

on Building Associations (2d ed.), sec. 511. The Federal bankruptcy law does not apply to such associations. Being corporations they cannot become voluntary bankrupts, and not being engaged in manufacturing, trading, printing, publishing, mining or mercantile pursuits they cannot be adjudged involuntary bankrupts. See Federal Statutes; also In re N. Y. Building-Loan Banking Co., 127 Fed. Rep. 471. Hence the Pennsylvania insolvency law of 1901 is in force in such cases, and an assignment made thereunder by a building and loan association is valid: Christian's Appeal, 102 Pa. 184. The defendants make the further contention that the plaintiffs' remedy against the defendants as defaulting or derelict stockholders is prescribed by statute, and that this remedy must be strictly pursued. I fail to see the application of the principle invoked to the facts of this case. The right of the plaintiffs to pursue the remedy adopted is so apparent that further comment on this contention is deemed unnecessary. I believe all of the foregoing questions were raised and disposed of on the demurrer filed to this bill.

The only remaining question that need be considered is whether the plaintiff association can recover back these excess payments and credits made on stock. They were made under a mutual mistake of fact, and the authorities in Pennsylvania that money so paid may be recovered back are very numerous. One or two citations, however, analogous in principle to the case in hand, will be sufficient to answer this inquiry: Callahan's Appeal, 124 Pa. 138. In this case a mortgage was marked satisfied under the mistaken belief that the mortgagor's stock had matured, and that he was entitled to have the mortgage canceled and delivered up to him. The court below, on application showing the mistake, struck off the satisfaction, and the Supreme Court affirmed the judgment: Mutual B. & L. Association's Appeal, 2 Atl. Repr. 859. In this case by errors of the officers of the association shareholders made overpayments of dues. Upon a bill in equity for relief, it was sustained upon the general principle of mistake. The principle enunciated by these cases rules the case under consideration. Numerous cases from other jurisdictions, almost identical with this case, might be

cited in support of the general principle that dividends prematurely paid by mistake can be recovered back.

Two grounds of injury to the defendants are suggested: 1. That if the plaintiff association had not blundered in its bookkeeping and thereby matured preceding series of stock ahead of time, the defendants' stock would have been matured approximately at the date it was apparently matured; or if the association had been diligent in discovering its errors and had compelled the stockholders in preceding series, before the bar of the statute of limitations had intervened, to refund the excess payments and credits made to them, the defendants would not have been injured as they are by such erroneous payments and credits. 2. That the association by reason of its negligent bookkeeping terminated the defendants' relations with it, and thereby prevented them from participating in the future earnings of the association in maturing their stock. Regarding the first suggested ground of injury, it is only necessary to say that the equities of the stockholders in series subsequent to the eighth must be considered, and the defendants cannot escape liability to refund money to which they are not entitled because stockholders in series preceding the sixth have succeeded in doing so. If the errors in bookkeeping had been discovered prior to August 22, 1899, the defendants could not have compelled the payment to them in full of their stock at that date, although it would have been matured but for such errors. But as a fact it would not have been matured at that date, and was only apparently matured because of said errors. They are in no better position now to insist that their stock shall be considered as matured on August 22, 1899, and by reason thereof they are entitled to retain the full matured value of the same, than they were at that date. The error terminating the defendants' relations with the association before their stock had matured affords no basis for their retaining the money paid them under an honest misapprehension of the true situation. If the error had been discovered in time, and the excess payments and credits refunded, the defendants no doubt would have been entitled to be placed in statu quo. This result may follow now upon refunding the excess payments or credits, that is to say,

382 KURTZ *v.* BUBECK.

Opinion of Court below—Opinion of the Court. [39 Pa. Superior Ct.

they may resume their position as stockholders and be so treated and considered in winding up the affairs of the insolvent association, if they would benefit thereby. It must be remembered that the errors or mistakes complained of were committed by the officers of the association, and these officers represented the stockholders in the eighth series as well as in all other series at the time of the commission of the error which is sought to be corrected by this bill.

In accordance with the foregoing findings of fact and conclusions of law, the prothonotary will enter the subjoined decree nisi, and give notice to the parties or their counsel, and unless exceptions are filed within ten days secundum regulum he shall enter the same as the final decree of the court.

*Error assigned* was decree enforcing repayment of overpayment.

*H. Clay Campbell*, for appellants.

*Cadmus Z. Gordon*, with him *W. W. Winslow, J. L. Fisher* and *W. M. Gillespie*, for appellees.

Per Curiam, May 21, 1909:

The decree is affirmed at the costs of William Elwood, the appellant, upon the findings of facts, conclusions of law and opinion filed by the learned judge below.

---

## Simpson's Estate.

*Decedents' estates—Orphans' court sales—Conversion—Act of June 12, 1893, P. L. 461.*

An orphans' court sale does not divest the title of the heirs until after confirmation thereof and conveyance delivered under the order of the court. The sale, even after confirmation, does not divest the title of the heirs of the decedent, for it remains in the power of the court until a deed has been executed and delivered. Until then no conversion takes place,