## Stone v. Schiller Building & Loan Assn. et al., Appellants.

545

Argued November 24, 1930.  Before Frazer, C. J., Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

M. J. Martin, with him Paul G. Collins, for appellants.—Plaintiff is barred from relief by her own laches: Kinter v. Commonwealth Trust Co., 274 Pa. 436; Patton v. Trust Co., 276 Pa. 95.

Equity will not lend its aid to one who has slept on his rights until the original transaction is obscured by lapse of years and death of parties: Dalzell v. Lewis, 252 Pa. 283; Taylor v. Coggins, 244 Pa. 229; Whitney v. Fox, 166 U. S. 637; Hardt v. Heidweyer, 152 U. S. 547; Marble Co. v. Wiggins, 12 Pa. Superior Ct. 577.

The individual defendants are responsible, only if their action was negligent or they failed to exercise ordinary business judgment: Spering's App., 71 Pa. 11; Swentzel v. Bank, 147 Pa. 140; Watt's App., 78 Pa. 370; Lincoln Market Co.'s Case, 190 Pa. 124; Com. v. B. & L. Assn., 20 Pa. Superior Ct. 101.

John H. Price, with him Jerome I. Myers and Cole B. Price, for appellee.—The capital of a corporation is a trust fund for the payment of creditors; stockholders who diminish that fund by distribution among themselves, receive it impressed with the trust, which a court of equity will enforce: Stang's App., 10 W. N. C. 409; Chambersburg M. & B. Assn.'s App., 2 Walker 488; Clum & Atkinson v. R. S. Co., 26 Pa. Dist. R., 18, 20; C. P. R. Co. v. Fitler, 60 Pa. 124; Trust Co. v. Simpson, 10 Pa. D. & C., 403; Smith v. Blachley, 188 Pa. 550; Hughes v. Bank, 110 Pa. 428.

It is apparently well settled that directors and stockholders are liable to account for corporate assets, as trust funds, where preferences have been given in distribution: Cochran v. Shetler, 286 Pa. 226; Kurtz v. Bubeck, 39 Pa. Superior Ct. 370; Loan Society v. Eavenson, 248 Pa. 407; Loan Society v. Eavenson, 241 Pa. 65; Beatty v. Guaranty Co., 226 Pa. 430; Bradly v. Jennings, 201 Pa. 473.

All courts having general equity jurisdiction have inherent power to appoint receivers in ordinary equitable adversary cases, preserve property, etc.: Cunliffe v. Consumers Assn. of Am., 280 Pa. 263; Cochran v. Shetler, 286 Pa. 226; Parry v. Lackawanna, etc., Assn., 72 Pa. Superior Ct. 603.

OPINION BY MR. JUSTICE KEPHART, January 5, 1931:
Schiller B. & L. Assn., one of the appellants, was incorporated in 1894 with a capital of $1,000,000. L. A. Lange was its executive secretary. December 1, 1909, his father, Christian Lange, subscribed for 325 shares of its stock, paying therefor $54,000 and taking title thereto in the joint names of himself and wife. Two months later it was discovered that Lange, the secretary, had misappropriated some $237,000 of the association's money. The state banking department then directed liquidation of the affairs of the association. Lange, the secretary, to settle the defalcation, transferred certain property to the association and among the items was an attempted assignment of the block of 325 shares of stock. It had been ineffectively transferred to him by his father. The association accepted it supposing he had a right to assign it. A short time thereafter the son absconded from the jurisdiction. Christian Lange and his wife notified the association five years later, February 3, 1915, that they desired to secure the withdrawal value of this stock. The stock was thereafter assigned to their daughter, Minnie L. Stone, appellee, who instituted an action on June 1,

1915, against the association in the Court of Common Pleas of Lackawanna County to recover the withdrawal value of the stock. This was on the theory that as the stock belonged to her father and mother as tenants by entireties, the transfer to the son by the father conveyed no title. This action was prosecuted to judgment in her favor March 12, 1927; the amount found due was $111,551.87. The association having been forced into liquidation by this shortage, the officers from 1910 to 1926 paid all claims of shareholders except appellee; and having applied for dissolution, Minnie Stone then brought this proceeding in equity in effect to recover that sum of money from the association, its stockholders and officers, who were such since 1915. The court below appointed a receiver, made an order for discovery, and granted other relief, from which defendants appeal.

The judgment of the common pleas court as such cannot be contested here; it is res judicata for what it lawfully embraces. It binds us to the fact that Minnie L. Stone was the owner of the stock, and that the amount then found to be due was $111,551.87. But this sum does not fix the amount appellee can recover, as there are certain elements making up the judgment which must receive further consideration when it is to be given effect in equity.

In the liquidation of a corporation its property is a trust fund for the payment of its debts and should be so regarded. All the creditors are entitled to have their debts paid out of the corporate assets and they are preferred to shareholders: Christian's App., 102 Pa. 184, 188, 189. See Wabash, etc., Ry. Co. v. Ham, 114 U. S. 588. Shareholders have equal rights in the distribution of corporate assets after the general debts of the corporation have been paid: Christian's App., supra: Love v. Clayton, 287 Pa. 205. A withdrawing shareholder is at no time a creditor of the association as that term is usually understood: Christian's App.,

supra. Withdrawing shareholders of a building and loan association, suspended in payment as appellee has been, have equal rights. A distribution of the assets among members without paying or securing the sum found due to another shareholder would be improper as to the latter, and such funds may be pursued in the hands of the members unlawfully receiving them, as an over payment: Kurtz v. Bubeck, 39 Pa. Superior Ct. 370.

A building and loan association is much like a partnership though possessing corporate rights: Christian's App., supra. Unlike a corporation, its shareholders may withdraw their contributions under certain limitations. The Acts of April 22, 1850, P. L. 550; April 29, 1874, P. L. 73, 97, and April 6, 1870, P. L. 56, permit shareholders to withdraw the amount paid in less all fines and other charges, which include a due proportion of expenses: Folk v. State Capital Savings and Loan Assn., 214 Pa. 529, 540. In this respect there is no conflict in the several acts.

Withdrawal by a shareholder of his contribution presupposes that sufficient assets or a relative proportion of them will remain for the benefit of those who continue to be active members: Christian's App., supra. Withdrawal necessarily reduces capital as it takes the amount paid in by the shareholder. The statement that sufficient assets must remain means that where there is or may be an impairment of capital the right to withdraw is not unlimited: Folk v. State Capital Savings and Loan Assn., supra. But, where there is no impairment of capital, the shareholder's right to withdraw is complete; and he may enforce it by suit at law: U. S. Building and Loan Assn. v. Silverman, 85 Pa. 394; McGovern v. Cosmopolitan Savings & Loan Assn., 44 Pa. Superior Ct. 212. This situation is not difficult, but where a shareholder asserts his right by suit, when there is or may be a material impairment of capital, difficulty arises. It has been stated that such

action may be pursued to judgment in all cases: U. S. Building and Loan Assn. v. Silverman, supra. This is not a correct view. In that case it was pointed out that if the affidavit of defense had set up losses resulting from depreciation of property or otherwise, or had it set forth an indebtedness, a proper set-off would have been allowed. The case does not support an unqualified right to judgment in every action. It depends on whether the association is solvent or insolvent. An insolvent association is one that, after paying its general creditors, cannot pay back to its shareholders, dollar for dollar, the amount of contributions: Kurtz v. Bubeck, supra; Endlich on B. & L. Associations, 2d edition, section 511.

The fundamental basis governing the right of withdrawal is that the association must be solvent. Insolvency, actual or potential, is incompatible with the right to withdraw. A withdrawing member can obtain no advantage or priority over his fellow members through suit and judgment under such circumstances (Christian's App., supra); a judgment is ineffective for any purpose except that it may hasten further liquidation. If the association were liable to judgment and execution at the hands of every withdrawing shareholder, it would result in a race for judgment whereby the assets would be eaten up through forced sales: O'Rourke v. West Penn Loan and Building Assn., 93 Pa. 308; Andrew v. Roanoke B. & L., 98 Va. 445.

Solvency in connection with a building and loan association is not a matter of bookkeeping but of sound business judgment. Where an association is insolvent, as that term is generally understood, or where a succession of withdrawals would precipitate insolvency, or have a strong tendency to do so, a judgment should not be entered in an action by a withdrawing member. A judgment under such circumstances would not be effective. See Christian's App., supra: National Savings and Loan Assn., 9 W. N. C. 79. If a shareholder

wishes to force further liquidation, it should be through the proper authorities. Where an investment in a building and loan association turns out to be doubtful, and the directors, by careful and prudent management, can save the venture, or greatly minimize the loss, these officers should be given every opportunity to bring the matter to a successful conclusion. This is a fundamental idea of partnership. The difficulty with associations is not always brought on by mismanagement; more frequently it is a depressed real estate market, particularly in times of great economic depression, such as the present. A shareholder owes a duty to his fellow members of the so-called partnership to not place them, as well as himself, in a position where unnecessary loss must be suffered. He should not embarrass the association by suit and judgment. Such actions accentuate an already distressed real estate market, imperil loans, bring on execution sales, forced liquidation, or a state of insolvency: O'Rourke v. West Penn L. & B. Assn., supra, 310, 311. To avoid such a disaster, when payment to withdrawing members becomes impossible, a reasonable time should be given to enable the officers to reëstablish the company. If this step is unavailing, the state banking department should be called in. They may be relied on to keep the affairs of the concern on an even keel and prevent over-reaching, if any is attempted.

A withdrawing member obtains no advantage or priority over his fellow members by judgment. "When a building association has failed to fulfill the object of its creation and has become......insolvent,...... after expenses incident to the administration of its assets are deducted, the general creditors, if any, should be first paid in full, and the residue of the fund should be distributed, pro rata, among those whose claims are based upon stock of the association, whether they have withdrawn and hold orders for the withdrawal value thereof, or not. Both classes are equally meri-

torious......": Christian's App., supra, 189. As we said of a judgment on a bond of a corporation, a "bond-holder gains no higher status in relation to the property because his claim is reduced to a judgment. It is a bond, and nothing more. Issuing of an execution on the judgment did not increase its value; it is still a claim on a bond and has the same status as another bond on which no suit is brought": McDougall v. Huntingdon, etc., R. R. Co., 294 Pa. 108, 127. A withdrawing stockholder is not obliged to share losses after a notice of withdrawal has been given to a solvent corporation; it is otherwise if the association is insolvent when notice is given. When the notice of withdrawal was given in this case the association was in process of liquidation. Appellee's judgment, under all the circumstances of this case, is entitled only to the benefits of an ordinary shareholder; and payment must be governed by the foregoing rules.

The further question here presented is whether appellee's right at law is enforceable in equity; first, against the officers or directors of the association, and, second, against the shareholders.

When this case was here before in an attack on the pleadings (Stone v. New Schiller B. & L. Assn., 293 Pa. 161), in reversing, Mr. Justice SIMPSON, speaking for the court, said: "Knowing that the association was a serial one, and would, in the ordinary course of business, pay withdrawing and maturing shareholders, it is gravely doubtful whether she [appellee] could be silent during all the years after she began her suit at law and not pay the penalty for her indifference; at least as respects them......and perhaps, also, as regards the shareholders who continued to pay their dues after she began suit; and the directors who innocently and in good faith distributed the assets of the association in the customary way. We do not decide any of these matters, however, but call them to the attention of the court below that they may hereafter receive full

consideration." This direction determined the course of trial when the case was again taken up by the court below.

Appellants contend Minnie Stone was guilty of such laches as would preclude any recovery, or, if she may recover, her equitable right would not sustain a recovery against the officers personally. Appellee says she was unfairly dealt with since the directors and officers did not set up a fund to meet her claim, and the contest of her claim was not in good faith.

Ordinarily if the liquidating officers knew this claim was outstanding, they could not, without clear justification, refuse to recognize it; if they did, it would be at the peril of personal liability (Love v. Clayton, supra; McDougall v. Huntingdon, etc., R. R. Co., supra); in such case it requires very little evidence to show at least a constructive fraud that would impress such liability on these officers. While no fund was set aside by the officers to meet any part of this claim, but, as far as it appears, they acted in good faith in this and all else that they did, especially in not holding up payment to other members until the litigation was settled. Officers or directors of a corporation are not personally liable for honest mistakes in judgment when doing acts within their discretion, even though such mistakes show absence of reasonable care; they are liable only when they are grossly negligent or fraudulent: Spering's App., 71 Pa. 11. It is clear, therefore, that the officers, directors and stockholders, unless they have been guilty of some wrongdoing injurious to her, shall not be made to suffer personally other than the refund to be ordered from them as individual shareholders.

While equity does not aid stale claims wherein parties sleep on their rights or acquiesce for a long time in a given course of conduct detrimental to their interests, it will become active when conscience, good faith, and reasonable diligence are apparent. Where

these are wanting, that court may be passive: Stevens
v. Delaware, Lackawanna & Western R. R. Co., 278
Pa. 284, 293. Here appellee was in the common pleas
prosecuting her claim with a certain indifference, as
appears later, and appellants were liquidating the af-
fairs of the association without making provision for
the payment of a claim they knew was being prosecuted.
To have been diligent, complainant should have made
some effort to ascertain the status of her claim during
the period of its litigation, and the burden was on her
to prove due diligence, that is, by taking such steps
as a reasonable person under similar circumstances
would have taken. See Kinter v. Com. Trust Co., 274
Pa. 436. However, her lack of effort to ascertain the
status of her claim before the liquidating officers or
give them warning that she proposed to have it paid,
will not defeat her right (Love v. Clayton, supra);
the claim was being vigorously contested in the com-
mon pleas by the appellants. But if from peculiar
knowledge there was imposed on her a special duty,
not to the association as such, but to other members,
her right may be curtailed or the liability of the officers
modified.

What Minnie Stone knew or should have known from
the time she became employed by the building and loan
until the institution of the present action, is important
as affecting her right. She was employed by the asso-
ciation from 1904 to 1910 as an assistant to her brother
and her contact was such as to give her an intimate
knowledge of the association's affairs as well as those
of her brother. She stopped working either after the
defalcation or after her brother had absconded, but was
an employee when the banking department investigated
it and ordered a liquidation of its affairs. The associa-
tion was in a state of insolvency because of this
shortage, including appellee's claim. The liquidation
continued until 1926; it was done quietly, under the
advice of able and conscientious lawyers. These officers

placed advertisements in five newspapers of wide cir-
culation calling in pass books to be checked and veri-
fied; all such books, 6,400 in number, were presented
except appellee's, her sister's, and members of her fam-
ily, including the wife of Lange, the defaulter. Neither
she nor her parents thereafter made inquiry of any one
as to the standing of their pass books, though she knew
of the intervention of the state banking department.
When the transfer was made by her brother, appellee
calculated the value of the various series of stock to
be used as an offset to the defalcation of her brother
and know its maturity date. She knew or had reason
to know the stock had been canceled on the books of
the association from the time it had apparently been
transferred by her brother in 1910, and that the officers
assumed the assignment made by her father to the son
and by the son to the association was of value. They,
the officers, actually used it to reduce his indebtedness.
The shares were not reported to the state banking de-
partment as a liability as the law required. When ap-
pellee's notice of withdrawal was given, fifty-five per
cent of the capital assets of the association had been
paid out under the scheme of liquidation.

No complaint was made by letter or otherwise of
the method of liquidation to the department nor to the
attorney general, though she and her counsel knew it
was not under the statute. The liquidation was ordered
because, when done through statutory proceedings, there
is too much waste to the shareholders. Moreover, to
have then liquidated the mortgages and sold the real
estate would have precipitated great loss. Appellee's
acts would seem to indicate she preferred the method
pursued as best. She is now in no position to complain
that the statutory method was not followed. Innocent
shareholders made payments into the association after
the defalcation enabling what would have been an in-
solvent association to settle in full the claims of share-
holders against it. There is no evidence showing ap-

pellants dealt fraudulently with appellee in ignoring this claim, which they believed unjust.

The court below finds ten years was a reasonable time within which to determine litigation, such as appellee's, in the common pleas. If this is true, it is a most serious reflection on our judicial system. The time was unreasonable; we need not decide where the fault lies, but the same steps taken by appellee to force quick action in the last years could have been taken in the earlier years. The association under the circumstances was justified in contesting every step in the common pleas, but this did not stop appellee from moving for expedition. Both parties are responsible; but appellee, with all her information, and with the safety of her claim at stake should have moved. However, as the accounting is asked of an express trust to convert assets and satisfy shareholders, neither the statute of limitations nor ordinary laches can be interposed to defeat the claim (see McGrann v. Allen, 291 Pa. 574), at least in its entirety, no rights of third parties intervening.

Appellee's right to a refund from the shareholders is clear. The judgment is made up of principal $69,000 and interest $42,000; that principal was augmented by certain sums from $54,000. The assets of this association will embrace the sums paid all shareholders since 1915. They will be allocated to appellee's claims and the claims of all shareholders. She will receive no more than her proportionate share, the same as other shareholders; she has no higher standing. All losses and administrative costs and expenses already paid must be given full credit; they are not open to question. Appellee is in no position to insist on anything more. If, during the period from 1915, innocent shareholders paid in on account of their stock, they will be entitled to deduct such payments from the amount they receive in liquidation and only be required to share pro rata with appellee as to the balance. In the ab-

sence of a combination to do wrong, no officer or director or stockholder shall be personally liable for the failure of any stockholder to repay any sum found to have been received by him which should have gone to this appellee.

For the purpose of aiding the receiver in this respect, this much of the decree of the court below is affirmed. The officers and directors of the association must deliver, transfer and pay over to the receiver all books, records, accounts, vouchers and all other documents of the association and all assets, if any, and are enjoined from otherwise disposing of the same. They are to furnish and show all the records and books relating to the business transactions of the association commencing with the withdrawal of the 325 shares of stock. The receiver is to take over the property and assets of the association and state an account to the court. The officers and directors must furnish to the receiver, if they can, the number and series of shares held by each, their date of issue, and date of maturity. They must also furnish the amount withdrawn by each shareholder so as to determine what amount, if any, should be paid by that shareholder to this appellee.

Decree, as modified, is affirmed at appellants' cost.