## In re George S. Hensel Building & Loan Association

John E. McCully and James R. Wilson, for petitioners.

ALESSANDRONI, J., July 26, 1934.—This is a petition, under section 621 of the Building and Loan Code of May 5, 1933, P. L. 457, by the George S. Hensel Building & Loan Association for an order reducing liability to shareholders. It is represented that the value of the assets has depreciated to such an extent

that the board of directors, after due appraisal, have authorized a reduction in the value of the stock of 43 percent. Attached to the petition is the certificate of William D. Gordon, Secretary of Banking, approving the petition for an order to reduce its liability by 43 percent, etc.

The prayer is that the liability of the association to all its shareholders be reduced by 43 percent of the amounts paid in by them respectively on or before July 14, 1933, in such manner as to distribute the losses equitably among such shareholders in accordance with the provisions of the act.

To this petition Margaret H. Yerkes answers that she is the holder of five shares in the thirty-seventh series, having paid her dues in full up to and including October 1933. Her dues so paid in, up to and including July 14, 1933, amounted to $700.

On November 3, 1922, she subscribed to five shares in the thirty-ninth series, paying in her dues in full until October 1933, which on July 14, 1933, amounted to $640; in June 1927, she borrowed $300 on her shares of the thirty-seventh series, and in November 1927, she borrowed $200 on her shares in the thirty-ninth series. In November 1933, she withdrew from the said association.

There is formal denial that the flat reduction of 43 percent will distribute the alleged losses of the petitioner equitably among its shareholders. The essential averment, however, is that the order prayed for if granted will not distribute the alleged losses equitably among the shareholders, because it will compel all withdrawing shareholders to bear the same share of the estimated depreciation of the assets as those who have not withdrawn, but will not permit withdrawing shareholders to share in any future appreciation of those assets, although that appreciation will not be profits of the petitioner. The answer concludes with a prayer that, if the order of reduction is made, it be so modified that respondent and others in her class receive their just proportion of any future appreciation in the value of the assets by which the estimated losses on which the said petition is based may be reduced hereafter.

We are therefore called upon to determine the status of the respondent and her rights, legal and equitable. The respondent is referred to in her answer as the "withdrawn" shareholder. The use of the term is confusing because it implies that her status as a shareholder is terminated. It is also susceptible of the interpretation that for certain purposes she is no longer a shareholder, whereas for others she is. We are of the opinion that up to the time of the granting of this petition she is a withdrawing shareholder in an insolvent association, and as such she is not entitled to the withdrawal value of her stock: Stone v. Schiller B. & L. Assn., 302 Pa. 544; Brown v. Victor Building Assn., 302 Pa. 254. At the moment of granting the petition, she becomes a withdrawing shareholder in a solvent association in which she will neither share profits or losses: Stone v. Schiller B. & L. Assn., supra. As such a shareholder, she is entitled to receive the value of her stock, and no more, as of the time of withdrawal.

The pertinent provision in section 621 is that the reduction of liability to shareholders be made in "such manner as to distribute the loss equitably among such shareholders." We take this to mean all holders of stock regardless of class. The language is general and all-inclusive. If the legislature intended to distinguish between withdrawing and other shareholders, it would have clearly said so. In the absence of such differentiation, we are without authority to place her in a special class. As we have already said, upon the granting of the petition the association becomes solvent. Her rights are fixed, and she is entitled to the remedies now afforded by law for payment. It is difficult to per-

ceive how, as a withdrawing shareholder of an insolvent association, she is affected inequitably when her rights are clearly no greater than those of an ordinary shareholder. "After the payment of general creditors, the residue of the funds belong to the stockholders and should be distributed among them pro rata whether they have given notice of withdrawal . . . or not. Both claims are equally meritorious and in marshaling the assets no class is entitled to priority over the other": Brown v. Victor Building Assn., supra.

To conclude, the respondent's position is not improved by the association's decision to avail itself of the provisions of section 621 of the act. To grant her prayer would mean to give her a share in future profits without the risk of future losses. This would hardly be equitable to the remaining stockholders who are assuming the risk of future profits and losses. The prayer of the petition should be granted.

### Order

And now, to wit, July 26, 1934, it is ordered, adjudged, and decreed that the prayer of the petition be granted and the liability of the George S. Hensel Building & Loan Association to all its shareholders be reduced in the amount of 43 percent of the amounts paid in by them respectively on or before July 14, 1933.