Blanarik *v.* The Slavic Progressive Beneficial
Union of Ambridge, Pa., Appellant.

Argued April 22, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Ralph E. Smith,* with him *Wayne Theophilus,* of *Smith & Theophilus,* for appellant.

*Lawrence M. Sebring,* for appellee.

OPINION BY PARKER, J., September 30, 1936:

At the conclusion of the trial in this case both plaintiff and defendant made motions for binding instructions. The trial judge directed a verdict for the plaintiff for $173.27 with interest from February 9, 1933, or $190.63. The defendant has appealed to this court and now assigns as error the refusal of the court below to enter judgment n. o. v. for it. The facts essential to the disposition of the case are not in dispute as they were evidenced by portions of the pleadings which were admitted.

The defendant is a secret fraternal beneficial society organized pursuant to the provisions of the Act of April 6, 1893, P. L. 10 which act was repealed and replaced by Act of May 20, 1921, P. L. 916 (40 PS 1011). The plaintiff became a member of the defendant corporation

on February 1, 1923 and there was issued to her a certificate of membership which gave her a death benefit in the amount of $600 in return for which she was required to pay monthly dues of $1.50. It was provided by the constitution of the society that at the end of ten years if she wished to surrender her certificate, she should receive the accumulated dues with 6% interest. Plaintiff paid the dues for the full ten years and on February 9, 1933 offered to return her certificate and made demand for the return of the dues paid by her with interest which demand was refused. Those facts having been shown and the certificate being offered in evidence, plaintiff rested her case.

In answer to this prima facie case the defendant proved by admissions contained in the pleadings that on February 1, 1933, it "was actuarily insolvent to the extent of approximately 25%" and that on that date "the value of the portion of the accumulations to the credit on the certificate of plaintiff, Bessie Blanarik, on the books of the association amounted to $173.27".

By section 5 of the Act of 1921 (40 PS 1016) under which the defendant is now acting, it is provided: "Any such society collecting a level rate of contribution, under any of its benefit certificates, based upon any table of mortality allowed for valuation purposes in this act, may grant to members holding such certificates extended and paid up protection or such withdrawal equities as may be allowed under its constitution and laws, but no such grants or privileges shall exceed in value the portion of the accumulations to the credit of such certificate at the time such grant or privilege is allowed."

The defendant then attempted to show a change in its constitution whereby the amount payable to withdrawing members was reduced, but it failed to show by any competent proofs that any such change was in fact made. Such being the state of the proofs the court

very properly, as we all agree, directed a verdict for plaintiff, not for her full payments with interest, but for the admitted value of "the portion of the accumulations to the credit of such certificate at the time such grant or privilege is allowed".

The defendant sets up an additional legal defense but admits in effect that if such additional defense is not good the judgment was entered for the proper amount. It therefore remains to examine only the legal question raised by appellant.

The argument of appellant runs like this: The defendant is insolvent, the claim of plaintiff is similar to that of a stockholder in a building and loan association which is insolvent and the demand of the plaintiff must give way to the equitable rights of fellow members, and finally that she can not have a judgment because defendant is insolvent. The argument of appellant is predicated on numerous statements of fact that were not shown by the proofs and that could not be inferred therefrom. The only fact pertinent to the argument that was shown was that the defendant was not *actuarily solvent,* in that there were not sufficient net assets to repay the withdrawing value fixed by the constitution, but these net assets were sufficient to pay the amount for which judgment was entered.

Insolvency is used in different senses as applied to organizations of different characters. In its general sense it is a term used to denote an insufficiency of the entire property and assets of an individual to pay his debts. It is used at times in a more restricted sense to express the inability of a party to pay his debts as they become due in the ordinary course of business: *Toof v. Martin,* 80 U. S. 40, 47. In Pennsylvania, an insolvent building and loan association is one that, after paying its general creditors, cannot pay back to the shareholders dollar for dollar the amount of contributions:

*Kurtz v. Bubeck,* 39 Pa. Superior Ct. 370; *Stone v. New Schiller B. & L. Assn.,* 302 Pa. 544, 552, 153 A. 758.

We are of the opinion that the evidence does not support an assumption that the defendant is insolvent even in the limited sense in which that term is used in the decisions relating to building and loan associations. The members of a building and loan association make periodic contributions to the capital of the corporation in the form of dues and the funds so received are loaned to the members who give as collateral for the loans mortgages on real estate and assignments of their installment stock in the association. The outstanding feature of such associations is that the dues with accumulated earnings will eventually repay the loan. When there are not any earnings on the capital (the dues), but there is an actual loss, the primary purpose of the association is defeated and it cannot continue to function successfully. The non-borrowing member will withdraw when he sees his capital depleted and there can be but one result and that is dissolution forced or voluntary and a distribution of the assets. For this and other reasons a building and loan association is said to be insolvent when after paying general creditors it cannot repay the contributions that have been made by the members to the capital and it cannot accomplish the very purpose for which it was organized.

There is not any parallel in the situation disclosed by the proofs in this case. It does not require the experience of an actuary to know that the part of the plan which contemplated a return of all dues paid with 6% interest in addition to furnishing fraternal benefits and protection in the form of life insurance would not work. However it does not follow on that account that the society may not continue to function and accomplish the purposes for which it was organized. It is true that it has not been able to accomplish all that was

originally contemplated but the general purposes of the association may still be carried out. All that occurred here was that there could not be returned to the members after meeting other demands, the amount that was originally intended. The situation would be similar to that of a building and loan association which planned to earn 6% or more and only earned 4%. Certainly such an association would not be said to be insolvent.

Just as a building and loan association is much like a partnership though possessing corporate rights *(Christian's Appeal,* 102 Pa. 184; *Stone v. New Schiller B. & L. Assn.,* supra, p. 551) so a beneficial association such as the defendant has many of the attributes of a partnership: *Order of Tonti's Estate,* 173 Pa. 464, 475, 34 A. 440. There are however many respects in which building and loan associations and beneficial associations differ from each other and the statutes by which they are controlled have little in common.

The appellant cites the New Schiller Building and Loan case and numerous others dealing with the rights of withdrawing members in building and loan associations which are insolvent or in failing circumstances and require reorganization or guidance by the banking department of the state. In so far as the principles stated in those cases are applicable they are authority for the proposition that a withdrawing stockholder in a building and loan association is not entitled to a preference over other stockholders and that all are entitled to be treated alike. "A withdrawing member obtains no advantage or priority over his fellow members by judgment": *Stone v. New Schiller B. & L. Assn.,* supra, p. 553. When such an association has failed to fulfil the objects of its creation and has become insolvent then the residue after payment of debts should be distributed pro rata.

It is not necessary for us to here decide the exact

extent to which these principles should be applied to a beneficial association for no basis is found in the evidence for their application. So far as the proofs disclose, this association is still functioning and carrying on its business and it is able to carry out its contracts except the impossible one of returning to members all that they have paid into the society with 6% interest. In addition there is nothing to show that the association has not the funds to discharge its obligations to all withdrawing members or that plaintiff by obtaining a judgment will secure an unfair advantage over his fellow members. We have carefully examined all of the cases referred to in appellant's brief, particularly those relating to failing building and loan associations. After careful consideration of the principles announced in those cases, we are unable to find any reason, legal or equitable, disclosed by the proofs which stands in the way of the plaintiff having a judgment for the amount prescribed by the constitution and not more than that permitted by the Act of 1921.

Judgment affirmed.