## Katz v. David Fine Building and Loan Association.

*Hymen Schwartz*, for plaintiff; *A. M. Roth*, for defendant.

LEWIS, J., Feb. 18, 1930.—This is a rule for judgment for want of a sufficient affidavit of defense. In his statement of claim the plaintiff avers that on April 10, 1929, he gave to the defendant building and loan association written notice of a desire to withdraw from the building and loan association, and that since that time he has been unable to receive payment of the moneys invested by him with the defendant association.

As a defense to plaintiff's claim, it is averred that on April 10, 1929, the building association "had insufficient assets to repay its stockholders the full paid-in value of their stock, and it is unable at the present time to state the value of the stock, in view of the fact that the assets of the association have been rapidly depreciating from month to month."

A statement of assets and liabilities is attached to one of the affidavits filed.

Our statutes permit any stockholder wishing to withdraw to do so by giving thirty days' notice of his intention, whereupon he becomes entitled to receive the amount paid in by him and such proportion of the profits as the by-laws may determine, less all fines and charges. They also provide that at no time should any more than one-half of the funds in the treasury of the corporation be applicable to the demands of the withdrawing stockholders without the consent of the board of directors: McGovern *v.* Cosmopolitan S. & L. Ass'n, 44 Pa. Superior Ct. 212.

It has been held that a building association cannot ordinarily set up its lack of funds as a defense to a claim by a withdrawing member (Second National Loan and Homestead Ass'n *v.* Hubley, 34 Legal Intell. 6; Beethoven B. & L. Ass'n *v.* Weber, 5 Atl. Repr. 235; United States B. & L. Ass'n *v.* Silverman, 85 Pa. 394), and if the association be solvent, it must pay him in his turn, assuming that other members gave notice of intention to withdraw.

In speaking of the position of a withdrawing member, Mr. Justice Sterrett (in United States B. & L. Ass'n *v.* Silverman, *supra)* says: "While in a qualified sense withdrawing stockholders may be considered creditors of the association, their rights, as against those with whom they have been associated, are very different from those of general creditors whose claims are based wholly on outside transactions. If the association has been prosperous, they have a right, under certain limitations and restrictions, to demand and receive their proportionate share of the accumulated fund, but if bad investments have been made, or losses have been sustained before actual withdrawal, they must bear their just proportion thereof. That right, as was held in United States B. & L. Ass'n *v.* Silverman, 85 Pa. 394, may be enforced by appro-

priate proceedings at law. But the right of withdrawal and the extent to which it may be exercised presupposes that at least a relative proportion of the assets will remain for the benefit of those who continue to be active members of the association. When a building association has failed to fulfill the object of its creation, and has become hopelessly insolvent, it cannot be justly or equitably wound up on any other principle than that above suggested. After expenses incident to the administration of its assets are deducted, the general creditors, if any, should be first paid in full, and the residue of the fund should be distributed *pro rata* among those whose claims are based upon stock of the association, whether they have withdrawn and hold orders for the withdrawal value thereof or not. Both classes are equally meritorious, and in marshaling the assets, neither is entitled to priority over the other. The claims of each are based upon their relation to the association as members thereof."

In the case of Andrews v. Roanoke Building Ass'n and Investment Co., 98 Va. 445, the court said: "The position occupied by a withdrawing member of a building association is not very clearly defined by the authorities. It is said that he is not in all respects a creditor, for if that were so, he might get judgment, issue an execution, acquire a lien upon real estate, and subject the personalty of the association to the prejudice of other creditors. He is no longer a member of the association, so far as his rights to participate in its management and control are concerned. . . . A member of such an association must, upon withdrawal, retain some relationship to the company, growing out of his membership, other than that of creditor. It seems to us that by so much as he falls short of being clothed with the rights of a creditor, by so much there must remain in him the residuum of his rights as a member."

The fundamental idea governing the right of withdrawal is that it is subject to the condition that the association is solvent. If it were otherwise, stockholders could at their will successively take out their investment and desert what would at once become a failing enterprise, and those remaining would have to bear the brunt of what ought to be a joint misfortune: Aldrich *v.* Gray, 147 Fed. Repr. 453.

As was said in Chapman *v.* Young, 65 Ill. App. 131: "The right of withdrawal, which is a peculiar feature of such institutions [building associations], is not conferred upon a member for the purpose of enabling him to escape his just proportionate responsibility for losses incurred by an insolvent association, but for the purpose of securing to each member the privilege of withdrawing his proportionate share of the accumulated funds. . . . No one could contend [that] the right could be exercised after an association has been judicially declared insolvent and a receiver appointed, for the condition of insolvency is incompatible with the right of any member to withdraw his contribution to the general fund until his proportion of the losses has been ascertained and adjusted. In our view, it is equally unreasonable to insist [that] a member, who, prior to such declaration of insolvency, but while the condition of insolvency in fact existed, gave notice of his intention to withdraw, should be deemed by the courts entitled to receive from the receiver out of the general funds more than his just proportion of the assets of the society. In such cases, the basis of distribution is not that provided by the by-laws in the regular course of business of a solvent society, but the principles of equity and mutuality must prevail and control. The by-laws of an association are enacted for the government of a solvent, going association, and of necessity must cease to have operation or effect when the association is no longer able to continue the transaction of the business it was created to transact."

Mr. Endlich, in his Law of Building Associations (page 92), says: "Accordingly, it has been decided in Pennsylvania that the fact of insolvency of an association negatives the right of any one to obtain a priority over his fellows by giving notice of withdrawal. 'The right of withdrawal presupposes that at least a relative proportion of the assets will remain for the benefit of those who continue to be active members of the association.' Whilst, therefore, it has been held that members who had given notice to withdraw and whose notices had matured before the society's insolvency was manifest or declared, were entitled to stand upon their rights as withdrawing members, even to the detriment of those who had not withdrawn or whose notices had matured; the better and more logical doctrine would seem to be that the existence of a state of insolvency at the time of the giving of the withdrawal notice, ascertained at any time before actual payment of the claim, renders the notice abortive and destroys the right to withdraw or to claim any benefit under the notice already given."

We think it unreasonable to suppose that the right of withdrawal can be intended to be given where there is insolvency or that it can logically be contended that one set of members are to be permitted to escape from liability at the expense of another set of members.

What is insolvency as applied to corporations of the character we are here discussing? Generally, corporations are held to be insolvent when their assets are insufficient to pay their creditors, exclusive of stock subscriptions. But building and loan associations are in a class by themselves, inasmuch as they are said to be insolvent when they cannot, besides paying their general creditors, pay back to their stockholders the amount of their contribution, dollar for dollar: Kurtz v. Bubeck, 39 Pa. Superior Ct. 370; Endlich on Building and Loan Associations (2nd ed.), § 511.

The defense to which exception is taken avers facts which seem to bring it clearly within the definition of insolvency. Then, too, a mass of involved figures are set forth which, on a mere cursory examination, disclose a deficiency of assets to satisfy the claims of stockholders, in view of the fact that the funds of the building association have been invested in mortgages secured on real estate, the value of which is "indeterminate," and that the ultimate net value of defendant building association assets will depend upon a market for real estate and the capacity of the mortgagors whose mortgages are now held by the defendant to pay off their mortgage loans. Reference to the figures submitted in the affidavit of defense also discloses that they are at most tentative and in the nature of an appraisal of some of the real estate and securities held by the association, which figures are undoubtedly liable to further reduction, depending upon the liquidation of the securities and values of the estate held by the association.

Counsel for the plaintiff at the argument conceded that from the facts pleaded plaintiff was not entitled to recover the full amount of money that he had paid in, but he urged this court to examine in detail the large number of complicated facts and figures set out in the affidavit of defense and to mathematically solve the loss in percentage, if any, that the plaintiff would suffer and give him judgment for the difference. We think that the court should not be called upon on pleadings alone to marshal the various items of assets and liabilities and consider the case from an accountant's or bookkeeper's point of view for the purpose of determining what action will best serve the interests of the parties and of the public.

The large number of suits begun against building and loan associations by stockholders desiring to withdraw prior to the maturity of their shares has

created a situation comparable to a run on a banking institution. Most of these building associations are utterly unable to meet the demands of withdrawing stockholders. To restrain the precipitate enforcement of such claims by the courts' control of the execution, as suggested by some cases, furnishes only a partial and makeshift sort of remedy. It merely puts the court in the position of supervising the internal affairs of each building association and determining a large number of questions prior to the time of granting permission, if any, for execution. These matters should be worked out by a receivership or liquidation under the supervision of persons thoroughly familiar with the problems. The large number of actions begun against building associations is undermining the credit of these associations, confidence of stockholders in the officers and directors has been lost, and there has been brought about a condition of insolvency, of forced liquidation, of sacrifice of assets and a severe loss to a large number of persons, most of them of small means, who for years have regarded these associations as a means of investment and have used them to acquire homes and in certain cases a small competence, all of whom can ill-afford to bear the burden. In a great many instances the avalanche of withdrawals and applications for them have been without any just cause or useful purpose; if they go on unchecked, they are bound to destroy a great number of these savings institutions wherein the assets, as they must be in building associations, are not in a liquid state to meet the immediate demands of those desiring to withdraw. A more comprehensive inquiry into the facts than is presented by the pleadings in the case ought to be had in order to justly determine the rights of the parties.

The rule for judgment is discharged.