## Simsohn v. Southern Co-operative Building and Loan Ass'n.

*Wolf, Block, Schorr & Solis-Cohen,* for plaintiff.
*Hirschwald, Goff & Davis* and *Gable, Vaughn & Gaul,* for defendant.

FINLETTER, P. J., July 6, 1931.—Plaintiff is a withdrawing stockholder of the defendant building and loan association. The proceedings to withdraw have so far advanced that he has given notice in writing in accordance with the by-laws; the secretary has made the proper endorsement upon the notice, and plaintiff is waiting his turn to receive payment.

The defendant is said to be planning a merger with another such association. The merger has not yet been accomplished, and plaintiff's bill prays that it be enjoined until the value of his stock shall have been paid or secured to him.

Preliminary objection is made on the ground that on the face of the bill plaintiff is not, as he describes himself, a "stockholder," but is a creditor.

As a stockholder, he would have a right to the relief he asks: Barnett *v.* Phila. Market Co., 218 Pa. 649; but not so as a creditor. In our opinion, he is still a stockholder.

It is conceded that, for many purposes, he has some of the rights of a creditor, but nevertheless he cannot free himself from his liability as a stockholder, nor be deprived of his rights as such, so long as he holds his certificate, or book, or other evidence of his stock ownership.

Building and loan associations are created under the terms of the General Corporation Act of April 29, 1874, P. L. 73, and its supplements. Section two (page 74) provides that the purposes for which corporations may be formed are: "XV. Building and Loan Associations." Section thirty-seven (pages 96-99) makes special provisions for such associations. Except for these special provisions, they are corporations like any other created under the Corporation Act.

Among the special provisions applicable alone to such associations is the right of the stockholder to withdraw and receive the value of his stock. The provision to that effect is in clause two of section thirty-seven of the Corporation Act, as follows:

"Any stockholder wishing to withdraw from the said corporation, shall have power to do so by giving thirty days' notice of his or her intention to withdraw, when he or she shall be entitled to receive the amount paid in by him or her, less all fines and other charges; but after the expiration of one year from the issuing of the series, such stockholder shall be entitled in addition thereto, to legal interest thereon: *Provided,* That at no time shall more than one-half of the funds in the treasury of the corporation be applicable to the demands of withdrawing stockholders without the consent of the board of directors, and no stockholder shall be entitled to withdraw whose stock is held in pledge for security."

The Act of 1879 makes some changes not important in the present discussion.

This right of the stockholder of a building and loan association to withdraw his contributions to capital, together with their earnings, is peculiar to such associations. A stockholder in any other class of corporations under the act does not possess such a right. It is additional to the other rights of a stockholder. The successive stages of the exercise of this right are usually a written notice submitted at a regular meeting, an acceptance of notice by the secretary of the association, the lapse of thirty days, payment of the full withdrawal value, or a period of waiting until the turn of the stockholder-creditor is reached for payment, and finally payment.

Taking alone the language of the act, it would seem that the act of withdrawal consisted of two parts: first, the notice by the stockholder, and, second, payment by the corporation. The withdrawal would then be complete. It is true that the limitation of payment to certain funds, not always available, results often in the lapse of some time between notice and payment. It does not seem that this should affect the relations of the parties. Certainly the party not in default should lose nothing by the temporary incapacity of the other party to perform on its part. The status of the member, with all its advantages, should remain unaffected until the corporation has fully completed its performance.

While we think the attitude of the appellate courts upon the question is, on the whole, clear, there are phrases in some of the decided cases which require consideration, which we propose to give herein.

In the earliest cases the only question was the right of the withdrawing stockholder to payment.

In the United States B. & L. Ass'n v. Silverman, 85 Pa. 394, this was all that was before the court. Mr. Justice Gordon said, after reciting the provisions of the statute giving the right of withdrawal: "It will be seen from the above, that after thirty days' notice the membership of the stockholder is determined and he becomes a creditor of the corporation to the amount he has paid. . . . He may . . . recover judgment just as any other creditor."

There can be no two meanings of this language. The "membership is determined," meaning "ended," and he becomes a creditor. But it must be observed that the decision to this effect is not necessary to the conclusion that the stockholder is a creditor; that is, is entitled to be paid the withdrawal value.

In Lepore v. Twin Cities B. & L. Ass'n, 5 Pa. Superior Ct. 276, the same statement was made. But again the only question involved was the right to sue the corporation, and the computation of his claim.

In McGovern *v.* Cosmopolitan Savings and Loan Ass'n, 44 Pa. Superior Ct. 212, the effect of section two of the Act of 1879, P. L. 16, upon the two decisions (above) was alone before the court.

So that in none of the three was the question raised that is before us in the instant case, that is: Is the withdrawing stockholder a creditor and nothing more, or does he retain his status as a stockholder until relations between him and the corporation are severed by the payment back to him of his capital and the surrender of his certificate.

In Christian's Appeal, 102 Pa. 184, there had been an assignment for the benefit of creditors by the association. Four classes of stockholders' claims were presented: (1) Those who had withdrawn and been paid their withdrawal value (the treasurer who had made the payments asked credit for them); (2) holders of orders on the treasurer issued to withdrawing stockholders more than six months before the assignment; (3) stockholders who had given notice of their intention to withdraw several months before the assignment, but who had received no orders; (4) all other stockholders.

As to the first class the treasurer was held to be entitled to the status of a general creditor. That is, the stockholders had ceased to be (upon payment of full withdrawal value) either stockholders or creditors. The treasurer was entitled to be fully paid in preference to any of the other classes, whose claims were founded upon the relation they sustained to the association as *stockholders* thereof.

The auditor had, however, distributed the fund among the withdrawing stockholders, classes (2) and (3) above. This was manifest error. "That result was reached by holding that members of the association who had given requisite notice of withdrawal thereby ceased to be *stockholders* and became *creditors* to the extent of the withdrawal value of their stock. . . In this we think there was manifest error. While, in a qualified sense, withdrawing stockholders may be considered creditors . . . . their rights as against those with whom they have been associated are very different from those of general creditors. . . If the association has been prosperous, they have a right under certain limitations . . . to demand and receive their proportionate share of the accumulated fund; but if . . . losses have been sustained before actual withdrawal, they must bear their just proportion thereof. . . . Orders issued, to withdrawing stockholders are merely evidence of their interest in the assets remaining after paying general creditors."

In Assigned Estate of National Savings, Loan and Building Association, 9 W. N. C. 79, the difference between general creditors of an association on the one hand, and stockholders, on the other hand, who have become creditors either by the maturity of their stock; by judgment upon withdrawal value claims; or by notice of intention to withdraw, was pointed out by Judge Ludlow: "While it may be true," he said, "that a stockholder may recover judgment against the corporation and thus . . . become *in a sense a creditor*, yet the peculiar nature of the . . . building association, clearly, we think, indicate that an assignment for the benefit of creditors, . . . was never intended to reach such creditors as . . . members of a building association must be who have even obtained judgment upon their claims."

This was cited with approval by Mr. Justice Sterrett in Christian's Appeal, *supra*, who, after saying that the above was "well said," added: "While it may be true that a stockholder may recover judgment against the corporation, and thus become in a certain sense, a creditor thereof, he is nevertheless not a creditor within the meaning of our assignment laws."

It is plain then that the unpaid withdrawing stockholder is not a creditor and nothing else, and that nothing short of payment of the withdrawal value of his stock frees him from a stockholder's liability. It would follow as a corollary that nothing else would deprive him of his rights as a stockholder.

The recent cases of Brown *v.* Victor Building Ass'n, 302 Pa. 254, and Stone *v.* Schiller B. & L. Ass'n, 302 Pa. 544, confirm the limitations upon the creditor rights of the withdrawing stockholder, and inferentially tend to preserve to him his rights and liabilities as a stockholder.

In addition there is Assigned Estate of Brown Building and Loan Association, 12 W. N. C. 207, in which it is held that a withdrawing stockholder may withdraw his withdrawal, and that a suit in his capacity as stockholder amounts to such a withdrawal.

Judge Endlich's views are these: "The status of a member who has given notice of withdrawal is to some extent a peculiar one. Ordinarily under the rules of the association, he has no right to exercise the general functions of a member. Indeed, his doing so,—as where after giving notice of withdrawal he by proxy knowingly and intentionally participates as a stockholder in the deliberations of the society's meetings,—has been held to be a waiver of his right to withdraw under said notice:" Endlich on Building Associations, § 109; Decatur B. & I. Co. *v.* Neal, (Ala.) 12 So. 780.

"But during the period which his notice has to run before the association is bound to pay him out *he does not cease to be a member.* Thus prima facie a three months' notice to withdraw means a notice to withdraw *at the end* of the three months for which the notice is required. Hence in the interval between the giving of the notice and its maturity the true mode of describing him [the withdrawer] is to describe him as a member who has given notice of withdrawal and is entitled to payment:" Endlich on Building Associations, § 109.

Judge Endlich concludes: "His membership is only determined after the expiration of the required period of notice," citing United States B. & L. Ass'n *v.* Silverman, 85 Pa. 394, 397.

Undoubtedly this view of his status is correct. The suggestion we have to make is that such status is not ended at the expiration of the thirty-day period, unless the association has performed by paying the withdrawal value. There is implicit in the notice, accepted by the association, a demand by the member for payment and a recognition of his right by the association which carries with it the duty of payment. The provisions of the Act of 1874, section thirty-seven, *supra*, are that the stockholder shall have power to withdraw "by giving thirty days' notice . . . when he . . . shall be entitled to receive the amount paid in, . . ." Of course, the duty to pay is limited by the provision that payment must not deplete the funds more than a half. If the funds are insufficient, and payment is not made, we think the effect is to extend the thirty-day period until the association can perform on its part, *i. e.*, pay. Meanwhile the status of the member remains unchanged.

The plaintiff in the case before us seems to peculiarly require protection. His contract of subscription was with the corporation as originally constituted. He is being forced by the merger into a new contract with strangers, to which he never assented. As an ordinary creditor his position would not be weakened because no doubt the assets of the original corporation would pass to the merged association charged with the debt to him. But he is not an ordinary creditor. If he is a creditor only he is one with limited rights to payment and execution, to wit, out of half the funds in the treasury of the first corporation, and to them only after earlier withdrawals have been paid.

What will happen to him when the two treasuries of the two merging corporations are merged into one, and the two lists of withdrawing stockholders are also merged we do not know. Neither does the plaintiff. And he should not be forced into these complications against his will and beyond his contract of subscription.