## Levy v. Mount Airy Building and Loan Association

*Abraham L. Freedman*, of *Wolf, Block, Schorr & Solis-Cohen*, for plaintiff.
*Francis J. Eustace, Jr.*, of *Wilson & McAdams*, for defendant.

MacNEILLE, J., October 29, 1932.—We are considering a rule for judgment for want of sufficient affidavit of defense.

Plaintiff is a withdrawing stockholder in the defendant building and loan association. The rights of the plaintiff are admitted except that the defendant association avers that since the receipt of notice of withdrawal there has not been in the treasury an available fund, one-half of which could pay withdrawing stockholders.

For the purpose of showing the lack of available funds the defendant sets forth:

(a) That prior to receipt of withdrawal notice a series in the building and loan association had matured and was so declared; that it was, therefore, the obligation of the association to use available funds to pay off the maturing stock, thus deferring the payment on the withdrawal.

(b) That at and prior to the withdrawal notice the association owed large sums of money to banks.

(c) That since the receipt of the withdrawal notice defendant has been obliged to expend all of the available receipts in carrying real estate which it had been forced to take on mortgage foreclosure proceedings.

Thus in "a" the question is flatly raised as to whether a stockholder withdrawing after the declared maturity of a series shall be paid in preference to the holders of maturing shares.

Building associations are organized for the purpose of saving money for the members and permitting the earning of interest through lending to members from the common fund. Loans are made by two methods—one in the nature of an advancement, in which the member's shares are taken as collateral security, and, obviously, such a loan must be for a sum less than the book value of the shares. Another method is lending a sum greater than the book value of the shares and taking as collateral security real estate worth an adequate amount of money to secure the loan. Thus the lending of money brings profit to the association with which it may meet its ultimate object—which is to mature the stock of its shareholders.

Usually a shareholder pays $1 a month, and when the shares become worth $200 the shares mature and payment thereon becomes due the shareholder.

Upon joining an association, a shareholder contemplates remaining until such maturity, and although he is a shareholder in a corporation he is also a partner in the sense he has entered into a mutual contract with his fellow-shareholders to continue to maturity. It was early realized that it was too harsh a rule to require a member to remain during this period regardless of his financial misfortunes and at the peril of losing his contributions. To meet this situation the device of withdrawals was early resorted to. On this subject Judge Endlich says in his valuable work on Building Associations (2nd ed.), page 83:

"A provision, as politic in the interests of the building association, as just and reassuring to its members, is, therefore, made an integral part of the scheme, viz., that a member desiring to withdraw shall be allowed to do so, upon proper notice given to the association of his intention, and with the privilege of receiving from it what he has paid in by way of subscription (after deduction of all fines and charges against him, and of his proportionate share of the expenses of the enterprise, to the date of his withdrawal), together with such share of the profits of the association as may appear just and warranted by its business."

The right of withdrawal, however, is governed by such statutes as may exist on the subject and also by the charter and by-laws of the association; and these constitute the members' contract governing withdrawals. Thus there is a vested right to withdrawal. It is conceivable, however, that this vested right to withdraw may be subject to be divested by later amendments or repeals of the by-laws.

In the instant case there undoubtedly rests with the stockholder the right to withdraw. At the time she gave notice the association was solvent and the withdrawal was in legal and proper form. Her difficulty is that a series had matured and was unpaid. The stockholders who had remained in the series until maturity had been faithful to their obligations to the association as a corporation, and to their fellow-members in the partnership sense. It is inconceivable that owners of maturing stock should be deferred in payment to withdrawals made subsequent to the maturity (see Christian's Appeal, 102 Pa. 184).

The situation may be different where the withdrawal notice precedes the maturity of the series. There is never any assurance that a series will mature in advance of its actual occurrence, and until that moment the holders of such shares are on the same plane as their fellow-stockholders, with all the rights to withdraw subject to a preference based upon the priority of such withdrawals as to time. Until the moment of actual maturity the holders of such shares may withdraw on the same terms as any other stockholder, but when maturity occurs, and not until then, the holder of maturing stock acquires a superior right to be paid. We are forced to the conclusion that withdrawals made subsequent to maturity of a series must be deferred in payment and maturing stock must be paid as promptly as circumstances will permit.

The payment of all withdrawals that happen to be made before the maturing of a series may seriously defer the payment of such series, if all the available funds of the association are used to pay withdrawals made prior thereto. To remedy this situation, the General Corporation Act of April 29, 1874, P. L. 73, Sec. 37, Cl. 2, was passed, providing that not more than one-half the available cash in the treasury of the association should be used to pay withdrawals except by direction of the board of directors (see Brown v. Victor Building Ass'n, 302 Pa. 254). This seems to effect a fair sharing of the available cash as between withdrawing stockholders and maturing stockholders. No hardship is worked on either class.

In the instant case, however, examination of the pleadings discloses that the withdrawal notice was subsequent to the maturity of the series, and the conclusion is inevitable that in this respect the affidavit of defense is good because of a right that exists in the defendant to defer the withdrawal payment until it has met the payment of maturing series.

In view of what we have said on the question designated (a), it may not be necessary to pass upon the other questions designated (b), "that there is still a claim against the association for money borrowed from banks," and (c), "that since receipt of withdrawal notice the association has been put to necessary and immediate expenditure of available cash to carry real estate which it had been obliged to take at foreclosure proceedings," but since this case may go to trial, and what we referred to as (b) and (c) may be offered in defense, we give it as our opinion that, taken together, they constitute a class which is preferred and payment of which the directors may make in preference to withdrawals, if in their opinion the protection of the shareholders requires it. We think this is covered in Stone v. Schiller B. & L. Ass'n et al., 302 Pa. 544. There it was held that withdrawal by a shareholder presupposes that sufficient assets, or a relative proportion, will remain for the benefit of those who continue to be active members (page 551), and that sufficient assets must remain so that withdrawal will not be an impairment of capital (page 552); and where a succession of withdrawals would precipitate insolvency, a judgment should not be entered in an action by a withdrawing member.

For these reasons we discharge the rule for judgment for want of sufficient affidavit of defense.